REDMAN *et al.*, *Plaintiffs in Error*, v. BARGER *et al.*

Division One, December 11, 1893.

1. **Will**: INTERPRETATION: INTENTION. The intention of the testator is the controlling principle in the interpretation of a will.

2. ———: ———: ———. A power of disposition superadded to a life interest in a mixed estate of real and personal property given by will to a wife as a present provision will not, as against the intention of the testator, be construed to defeat a future provision made for his children out of the residue of said estate, left at her death, whatever change of form the property may have undergone under the power of disposition contained in the will.

*Error to DeKalb Circuit Court.*—HON. O. M. SPENCER, Judge.

AFFIRMED.

*S. G. Loring* for plaintiffs in error.

(1) The court erred in overruling the motion to strike from the record the petition of interplea filed by Gibson. *Camden v. Plain*, 94 Mo. 117. (2) If, under the will of her husband, Nancy Barger took the fee in said lands, then the money arising from the sale thereof became her absolute property. If, as claimed by the interpleader, she only took a life estate in said lands with absolute power of disposition of the same at pleasure when she exercised that power she thereby enlarged her life estate into the fee and the money arising from its sale became her absolute property. *Russell v. Eubanks*, 84 Mo. 84; *Harbison v. James*, 90 Mo. 427. (3) The court erred in its rulings on the declarations of law and in finding the issues for the interpleader.

*Huston & Parrish* for defendants in error.

(1) The trial court construed the will so as give a life estate to Nancy Barger, with the remainder after her death over to the legatees named in the will, and in this judgment there is no error. *Russell v. Eubanks,* 84 Mo. 88; *Harbison v. James,* 90 Mo. 411; *Lewis v. Pitman,* 101 Mo. 281; *Anderson v. Hall,* 80 Ky. 91; *Smith v. Bell,* 6 Pet. 68. (2) The will must be construed according to the intention of the testator, to be gathered from the will itself, not from single words, passages and sentences, but from the whole instrument "taken together in all its scope and design." *Russell v. Eubanks,* 84 Mo. 82, and authorities cited; *Nichols v. Boswell,* 103 Mo. 151; *Allison v. Cheney,* 63 Mo. 280. (3) Power of disposition added to an express life estate does not enlarge it into an absolute one. *Lewis v. Pitman,* 101 Mo. 281; *Ruby v. Barnett,* 12 Mo. 3; *Gregory v. Cowgill,* 19 Mo. 415; *Reinders v. Koppelmann,* 68 Mo. 482; *Anderson v. Hall,* 80 Ky. 91. (4) Nor is it necessary that the life estate should be created in express terms. If the intention of the testator to create a life estate can be gathered from a consideration of the whole will, this will be sufficient. *Lewis v. Pitman,* 101 Mo. 281; *Smith v. Bell,* 6 Pet. 68; *Giles v. Little,* 104 U. S. 291; *Seigwald v. Seigwald,* 37 Ill. 435; *Green v. Hewitt,* 97 Ill. 113. (5) An express life estate, with power of disposition and remainder over, is not destroyed by the exercise of the power. *Lewis v. Pitman,* 101 Mo. 281, and authorities cited; *Smith v. Bell,* 6 Pet. 68; *Green v. Hewitt,* 97 Ill. 113; Redfield on Wills, sec. 52, p. 345; *Burleigh v. Clough,* 52 N. H. 267; *Harleson v. Reed,* 15 Ga. 151.

BRACE, J.—In the matter of the distribution of the estate of Nancy Barger, deceased, on the final settle-

ment of her administrator in the probate court of DeKalb county, showing a balance in his hands of $2,577.88. Said court order distribution of said balance among the defendants in error, two of whom, Marcus A. Barger and Emmett A. Barger, were the children of Abram B. Barger, deceased, and the other three, the children of James H. Barger, deceased, who was also a child of the said Abram, living at the time of the death of the said Abram. From the order the plaintiffs in error who are the children of the said Nancy, deceased, by a former marriage, appealed to the circuit court of said county, where upon a trial *de novo* said balance was again ordered to be distributed to the defendants in error, and the case is brought here on writ of error, by William Redman and the other children of said Nancy by her former marriage.

The real question in the case turns upon the construction of the will of the said Abram B. Barger, deceased, admitted to probate in said county July 3, 1860, which, omitting the preface is as follows:

"And first I commend my immortal being to Him who gave it, and my body to the earth to be buried with little expense or ostentation by my executors hereinafter named, and as to my worldly estate and all the property real personal or mixed of which I shall die seized and possessed or to which I shall be entitled at the time of my decease I devise bequeath and dispose thereof in the manner following to-wit:

"Direction: *Imprimis:* My will is that all my just debts and funeral charges shall by my executors hereinafter named be paid out of my estate as soon after my decease as shall by them be found convenient.

"To my wife: *Item:* I give devise and bequeath to my beloved wife Nancy Barger all my estate real personal or mixed to have and to hold the same and to be empowered to sell or dispose of it at pleasure and

also all my moneys to be paid to her by my executors. hereinafter named within twelve months after my decease. I also give to her the use improvements and income of my dwelling house land and its appurtenan-- ces situate in DeKalb county Missouri to have and to hold the same to her and during her natural life and from and after the decease of my said wife I give and bequeath the remaining part of said real personal or mixed estate and hereditaments unto such child or children as I shall leave or have living at the time of my decease and to their heirs and assigns forever the same to be divided equally among them.

"Appointment of executors.—Lastly I do nomi- nate and appoint my said wife Nancy Barger and my son, James H. Barger to be the executors of this my last will and testament.

"In testimony whereof I, the said Abram B. Barger, have to this my last will and testament con-- tained on one sheet of paper subscribed my name and affixed my seal this twenty-fourth day of June in the year of our Lord one thousand eight hundred and. sixty."                                     his

"ABRAM B. X BARGER."
                              mark.

The widow, Nancy Barger, qualified as executor, administered the estate of her deceased husband, and upon final settlement took all the estate as devisee under. the will. She seems to have lived until about the year,. 1883, when, having died, Emmett A. Barger became administrator of her estate, who filed his account for. final settlement on the tenth day of November, 1885,. showing the balance aforesaid. There is nothing in the record showing of what the estate of which Abram Barger died possessed consisted, further than that it was real estate and personal property, all of which was disposed of by his widow during her life, and it is con--

ceded that the estate that remained in her hands and that was administered on by the said E. A. Barger, was either notes, or money arising from the sale by her of real estate which belonged to her husband, and which she took under the will as devisee, and which she had sold and either collected the purchase price or took from the purchaser promissory notes therefor in her own name.

It further appears from the evidence, and the court so found, that, under an agreement with the widow, E. A. Barger received from his mother during her lifetime $1,200 in real estate that had belonged to his father; that Marcus A. Barger (under like contract), of that estate, received $1,700, in land and other property, and that James Barger during his lifetime received $500 of that estate of his mother, which several amounts were charged to these parties as advancements in the order of distribution made by the court. The subject-matter of the controversy, is the proceeds of the other lands sold by Nancy Barger during her lifetime. Plaintiffs in error claim that by the provisions of the will these lands became the absolute property of Nancy Barger, and as her heirs at law they are entitled to share those proceeds. This contention is sought to be maintained by a very brief and simple mode of construction. It is to divide the *item* of the will in question into two paragraphs, and as by the first he devises all his estate "real personal or mixed." to his wife, with power to sell and dispose of it at pleasure, it is contended she took an estate in fee simple in all of said lands and the limitation over contained in the second paragraph is void, or that she took an estate for life with absolute power of sale and having exercised that power the life estate ripened into a fee, and there is no estate in remainder for the limitation in the second paragraph to operate upon, and in either view the

testator's children can take nothing of the proceeds of his lands disposed of by his widow in her lifetime under the will.

I. Would such a construction carry out the intention of the testator as manifested upon the face of the whole will? If so, we can readily adopt it—if not, we can not, whatever support it may seem to have from adjudicated cases supposed to be analogous. The first and last inquiry in the construction of a will is, what was the intention of the testator. To that intent technical rules must yield, and to it, other canons of legal hermeneutics must be subordinated. In order to ascertain that intention we have little to assist us in the present instance, except the written instrument.

The item in question, as it is copied into the record, is without punctuation, and no light is shed upon it by any other part of the will. As it is signed by mark, it is safe to say it was not written by the testator, and that he was probably an illiterate man. It is evident that its frame was copied from a form, and that the scrivener had a vague and indefinite idea of legal terms, with which, however, he seems to have had a sort of speaking acquaintance, such as justices of the peace sometimes acquire from often hearing and seeing them used. In the construction of a will thus prepared, we necessarily have to look first to the leading ideas expressed by the whole instrument, and then to the exact language in which they are clothed.

There is no difficulty in discovering the intent of the testator in some very important particulars. It is clear that he intended to dispose of his whole estate by his will, and intended that the whole of it should go to his wife and to his children; they are the only beneficiaries mentioned in the will and they are to have all of his estate after payment of his debts and funeral charges. He did not intend to divide the property

between them, or at all; he intended that his wife should have an estate in it, and that his children should have an estate in it.   It is also equally clear that the estate which he intended his wife should have should be measured by her life, and that the estate which he intended that his children should have should vest in them and their heirs and assigns forever.

Now, in the language of the will, when examined in detail, is there anything to be found inconsistent with these general purposes, or any rule of law that should defeat them?   The first sentence of the item under which plaintiffs in error claim, and whose claim thereunder would ignore the rest of the will, does not undertake to define the estate the testator intended for his wife.   It simply gives to the testator's wife all his estate, "real, personal or mixed," with power to sell or dispose of the same.   The scrivener seems to have purposely avoided defining the duration of the estate thus given, by withholding words of perpetuity or limitation which would naturally follow after the words "to have and to hold," for later use in the item.   At that point, the idea seems to have occurred to the writer that the terms already used might perhaps not be sufficient to carry the entire estate thus intended to be given to the wife to be held with power of sale, and with an "also" he adds "all my moneys" and with another "also" "the use improvement and income of my dwelling house land and its appurtenances."   Having thus safely covered everything, his mind recurs to the suspended limitation of the first sentence, and he resumes with the same words "to have and to hold the same" to her "*during her natural life*," and having thus defined the duration of the wife's estate in all that was given her to be held with power of sale, in the same breath, he defines the estate intended for the children in the words, "and from and after the decease of my *said* wife I give and

bequeath the remaining part of *said* real personal or mixed estate *and hereditaments* unto such child or children as I shall leave or have living at the time of my decease and *to their heirs and assigns forever* the same to be divided equally among them."

In these quotations some of the words have been emphasized to bring out more distinctly what is so evident upon a careful reading of the item, that the intention of the testator was to give the wife the whole of his estate, to manage, sell or dispose of it according to her own pleasure during her life, and at her death, whatever the form or condition of what was left of that same estate, whether real, personal or mixed, or that could be included by the scrivener under the comprehensive title of hereditaments, was to go to his children and their heirs and assigns forever. During almost a quarter of a century the wife and mother of the plaintiffs and her legal advisers, if she had any, as doubtless she had, in the settlement and management of the estate, and those who dealt with her in respect of the property devised, acted upon this evident intention of the will; the circuit court could see no reason why such intention should not be carried out in respect of the property of the testator that remained in her hands at her death. Nor do we think such intention should be defeated by a purely technical construction of the will. On the contrary, such intention should be carried into effect, as we think it may well be, on principle and upon the authority of the adjudicated cases. *Lewis v. Pitman,* 101 Mo. 281; *Munro v. Collins,* 95 Mo. 33; *Harbison v. James,* 90 Mo. 411; *Russell v. Eubanks,* 84 Mo. 83; *Bean v. Kenmuir,* 86 Mo. 666; *Reinders v. Koppelmann,* 68 Mo. 482; *Anderson v. Hall's Adm'r,* 80 Ky. 91; *Giles v. Little,* 104 U. S. 291; *Smith v. Bell,* 6 Pet. 68.

From these cases we think the doctrine may be

deduced that a power of disposition superadded to a. life estate, in a mixed estate of real and personal property, given by will to the wife as a present provision, ought not, against the intention of the testator, to defeat a future provision made for his children to take effect at her death, out of the same estate, if there remain anything of that estate to satisfy such provision in the hands of the life tenant at her decease, whatever change in the form of the property she may have effected under the power given her in the will. Unless this doctrine, consonant with justice and common sense, is maintained and applied; in many cases in which wills are drawn by unskillful persons, the manifest intention of the testator must be defeated, a result to be avoided, if possible, in all cases.

II. It appears that after an appeal had been taken by the Redmans from the order of distribution made by the probate court to the Bargers, an administrator *de bonis non* of the estate of the said Abram B. Barger was appointed by the probate court, and that he qualified as such and appeared in the circuit court and filed an interplea claiming the property in question as belonging to the estate of said Barger, and the issues were made up and tried on this interplea, and the court in its judgment ordered the money to be distributed by and through him. Some questions are raised upon the propriety of such appointment, and errors assigned upon some rulings of the court in respect of his plea. This administrator *de bonis non* was probably a superfluous figure in the controversy, and might have been dispensed with, but as his appearance in the case, and the rulings of the court in respect of his plea in no way affected the interests of the plaintiffs in error, we deem it unnecessary to consider those questions. The judgment of the circuit court is affirmed. All concur.