ST. LOUIS UNION TRUST COMPANY, a Corporation, as Trustee Under Declaration of Trust and Amendments thereto of Evelyn Tate Morton, Deceased, Appellant,

v.

Marian MORTON et al., Respondents.

No. 55325.

Supreme Court of Missouri, Division No. 2.

June 28, 1971.

R. H. McRoberts, Jr., Timothy B. Matz, St. Louis, for appellant; Bryan, Cave, McPheeters & McRoberts, St. Louis, of counsel.

Armstrong, Teasdale, Kramer & Vaughan, William H. Webster, St. Louis, for respondents.

HENRY I. EAGER, Special Commissioner.

This is a suit by a trustee seeking the construction of a will; that will determines the ownership of certain funds which the plaintiff is holding in trust. The trust, revocable in nature, had been created by Evelyn Tate Morton, widow of I. Powell Morton, for the benefit of herself and her own relatives. The defendants in the case are the residuary legatees under the will of I. Powell Morton, being nieces and nephews. We have jurisdiction because the amount in controversy exceeds $59,000.

**194**

Certain portions of that will must be quoted. A copy was attached as an exhibit to plaintiff's petition and made a part thereof. The will was executed on September 23, 1963; Morton died on November 29, 1965; his wife survived, as already indicated. A brother, Tunis Morton, and a sister, Mrs. W. P. Carlton, both of whom were contingent beneficiaries under the will, died, respectively, on August 5, 1965, and February 14, 1964; both of those dates were prior to the death of the testator. The widow survived until December 27, 1967, having established her trust in the meantime. Morton was a resident of the City of St. Louis and his estate is in probate there.

Item One (a) of Morton's will involved his tangible personal property in which we are not interested. Item One (b) was as follows: "(b) Any interest which I may own at the date of my death in real property located in Clarke County, Georgia, I devise to my said wife, if she survive me, for her life. I give to my said wife the absolute power to dispose of said real property during her life. Upon her death, if she has not so disposed of said real property, or upon my death if she does not survive me, I give said real property to my brother, TUNIS MORTON if he is then living and if he is not then living, I give said real property per capita to those persons named at the end of Item Four (b) (3) who are then living."

By Item Three the testator set up a trust for the benefit of his wife, with the income payable to her during her life, with the right in the trustee to invade the corpus, and with a power of appointment by will given to her. If that power was not exercised the balance was to be added to the trust created in Item Four, next considered. In Item Four, testator provided an income to his wife for her life out of his residuary estate; income was also provided therein (after the wife's death) for Tunis, the brother, and Mrs. Carlton, testator's sister, for their respective lives, effective upon the wife's death. Upon the death of both of those persons, the trustee was to distribute the remaining fund to the persons named in Item Four (3), namely, the nephews and nieces who are defendants herein, with provision for the issue of any of them were deceased. Item Four, with the defendants as the ultimate beneficiaries, thus constituted the residuary clauses of the will.

Item Nine (b) of the will is in large part as follows: "(b) Wherever used in this my Will, the term 'my residuary estate' shall be deemed to refer to all of the rest, residue and remainder of my property and estate, both real and personal, of every nature whatsoever, and wherever located, belonging to me at my death and including any lapsed or void bequest or devise hereunder, but not including any property over which I shall then have any power of appointment."

The testator owned a one-half interest in certain real estate in Georgia. Following his death his widow sold that interest for $63,375; she received $59,331.40 as the net proceeds. This she put into her own revocable trust, dated May 6, 1966, as her property. The money has remained intact, except that the evidence of an officer of plaintiff showed that it had paid certain specific "bequests" made effective upon the death of the grantor, which seemingly total $7,000. The widow (grantor) died on December 27, 1967, and this suit was not instituted until December 30, 1968. The evidence also showed that the defendants had made demand upon the plaintiff; we may fairly assume from the evidence that the demand was for the full net proceeds of the sale. The date of demand is not shown, nor is it shown what other property or assets are in the trust. However, the grantor conveyed to the trustee "all of the property set forth in Schedule A attached hereto," and we may also fairly assume that the proceeds of sale involved here were not the only assets of the trust. Defendants' answer seeks distribution to them under the residuary provisions of Morton's will, and they also allege that plaintiff is

the trustee of a resulting trust in their favor as to the proceeds of the sale of the Georgia property; they claim the entire net proceeds of the sale of that property. The "resulting trust" claim has not been briefed as such. Tunis Morton had farmed the Georgia land for some years, using it both for pasture and the growing of cotton.

The trial court found the essential facts noted herein, and concluded that (under Item One (b)) the intent of the testator was to grant to his wife a life estate only, that the power of disposal did not increase that estate, and that the exercise of that power did not divest the residuary legatees of their interest in the proceeds; and further, that the proceeds of the sale, with any increment thereto since the death of the widow, should be distributed to the defendants as remaindermen. A decree was entered accordingly, retaining jurisdiction in the court to pass upon questions of costs, expenses and attorneys' fees. A motion by plaintiff for a new judgment or a new trial was filed and overruled and this appeal taken in due course.

The single question involved here is whether Evelyn Tate Morton, the widow, took an absolute fee interest in the proceeds of the sale of the Georgia property, or whether she took only a life estate therein, leaving any remainder to the residuary heirs of the testator. She had the absolute power to sell, and no one here questions the fact that she conveyed a fee interest to the purchaser. If she had retained the property, all of her interest would certainly have ceased with her death, with the remainder in Tunis Morton, if living, and if not then in the defendants. The land was specifically devised to her "for her life." The question really is whether the proceeds merely took the place of the property itself, or whether the widow, by selling it, acquired full ownership of the proceeds pursuant to her power of disposition. The will made no specific reference to any "proceeds."

The plaintiff's position is, in substance, that the language of Item One,—dealing only with this real estate, is very specific, and that if the testator had intended that anyone else besides the widow should have any interest in the proceeds he would have said so; that there was no limitation upon her right to sell, or upon her right to the use of the proceeds, meaning that they were *hers,* to do with as she pleased, and that the will indicated such an intent. The defendants contended, and successfully, that the sale under the power did not change the widow's life estate to a fee, or give her any ownership of the proceeds beyond her life span; that the testator demonstrated his intent that any such proceeds remaining should become a part of his residuary estate and should pass to such beneficiaries after the deaths of the widow, the brother, and the sister. They further emphasize the fact that the property itself, if not sold, would have belonged to the wife for life only, then to Tunis, if living, and if not, then to these defendants; this was so provided in Item One (b) upon which the plaintiff necessarily relies.

◼ The law on this subject is rather scant. It seems to be established as a general proposition that a life estate is not changed into a fee by the addition of a power, limited or unlimited, to dispose of the property. Restatement, Property, § 111, p. 352 et seq.; Hamner v. Edmonds, 327 Mo. 281, 36 S.W.2d 929, 934; 28 Am. Jur.2d Estates, § 81, p. 182. Plaintiff cites Glidewell v. Glidewell et al., 360 Mo. 713, 230 S.W.2d 752. We cannot see that it is applicable here; the Court does quote from the case of Grace v. Perry, 197 Mo. 550, 95 S.W. 875, where it was held that a power of disposition granted to life tenants did not convert their estate into a fee, but that when the power was exercised by the life tenants a fee was conveyed, thus foreclosing the remainderman named in the will. That does not answer our question. No one here contests the fact that the purchaser from the widow in our case got a fee. The Perry case does not deal with the ownership of the proceeds of a sale but only with the remainderman's title. Plain-

tiff also cites several cases holding that the intent of the testator, as shown by the wording of his whole will, must govern, and that technical rules of construction must give way to this. There is no doubt that this is the general law.

In 158 A.L.R. at page 480 et seq. there is an annotation concerning the rights, as between the estate of a life tenant and remaindermen, to the proceeds of sale or disposition made by a life tenant in the exercise of a power granted. The writer reviewed the cases from 13 states. He concluded (loc. cit. 480–481) as follows: "Questions as to what title, if any, a life tenant has to proceeds (or property obtained with proceeds) coming to his hands by reason of his exercise of a power of sale or disposal are of course wholly dependent on the terms and intent of the will or other instrument creating the power and property interests. However, under nearly all instruments thus far in litigation, especially where the case has been merely the simple one of a life estate with superadded power of sale, the proceeds (or property obtained therewith) have been regarded as taking the place of property sold so that title was held to be in the remainderman subject to such rights of possession, user, investment, reinvestment, expenditure, or consumption as may have been given the life tenant." The Missouri cases discussed were Redman v. Barger, 118 Mo. 568, 24 S.W. 177, and Guthrie v. Crews, 286 Mo. 438, 229 S.W. 182, which we shall refer to later. A good many of the cases assert the proposition that the proceeds of such a sale merely *take the place* of the property and are subject to the same disposition.

Plaintiff apparently concedes that the above statement constitutes the general rule; but it emphasizes, as stated, that the result is "wholly dependent upon the terms and intent of the will * * *," and that this will shows a different intent. Plaintiff cites the case of Edds v. Mitchell, 143 Tex. 307, 184 S.W.2d 823, which is one of the cases cited and relied upon in the above annotation; plaintiff apparently does so only to emphasize the qualification of the rule, as there stated: "* * * provided of course, the language of the will does not disclose an intention that the proceeds of sales shall not so pass." (i. e., to the remaindermen.) That language would clearly imply that the proceeds should go to the remaindermen unless there is a disclosed intention to the contrary. Plaintiff also cites the case of Lawrence v. Beardsley, 74 Conn. 1, 49 A. 190. The facts are too complicated for a full recital. The testator devised a certain piece of town real estate to his wife (if not previously sold) to use during her life, with a power of sale and the right to use such part of the proceeds as were necessary for her support. The widow took possession at the testator's death and sold the property; at her death she still had a secured note and some cash which were the proceeds of the sale. The will gave to two sons the use of the property for their lives "if undisposed of," and one of them, as the survivor, claimed those proceeds. The Court held that the son took no interest under the will in the proceeds because the will indicated that his only interest would be in the real estate; the Court further held, however, that while the widow could use such proceeds as necessary during her life, the money and note in controversy were not *her* property but went back to the husband's estate as intestate property. The sale there did not enlarge her life interest. If we were to follow that case it might be held that the defendants would not take the proceeds under Item One of the will but that all rights of the widow to the proceeds and the use thereof ceased upon her death, and that the defendants would still be entitled under the residuary clause. We cannot see that the case is very helpful to the plaintiff.

Defendants cite the cases of Redman v. Barger, 118 Mo. 568, 24 S.W. 177, and Guthrie v. Crews, 286 Mo. 438, 229 S.W. 182. In Redman, the will of one Barger was construed as devising all his property, real and personal, to his wife for her life, with the right to sell or dispose of it, and

with the remainder to his child or children. The widow sold some real estate and the dispute was between her children by a former marriage and the children of the testator as to the remaining proceeds of such sale or sales. The Court held that the proceeds passed under the testator's will to his remaindermen, i. e., his children, and that all interest of the widow therein ceased upon her death; in other words, that she did not acquire a fee interest by changing the nature of the property from real estate to money, and that the obvious intent of the testator was to provide for his children by giving them *whatever* might remain. Plaintiff says that the case is inapplicable here, because we are dealing only with a specific piece of real estate and its proceeds and not a total estate, and that the language of the present will shows a different intent, i. e., that the wife should have title to all proceeds of sale. It concedes, however, that the Redman case states the majority rule as to wills generally which bequeath a life estate with power of disposition. It notes also that the Court recognized that the intent of the testator must govern. The case does stand for the proposition that, generally speaking, a change in the form of property from real estate to money, does not enlarge the estate of a life tenant.

The case of Guthrie v. Crews, 286 Mo. 438, 229 S.W. 182, is to the same general effect, although the power of disposition vested in the widow and executor was of a more limited nature. The Court quoted from and relied upon the Redman case, supra, and in effect reaffirmed its doctrine. Plaintiff seeks to distinguish the case by noting that the will contained a general direction for the sale of the remaining estate at the widow's death and a distribution of the proceeds. Nevertheless, the case does seem to reaffirm the rule that a change in the nature of the property does not enlarge a widow's life estate. The case of Morisseau v. Biesterfeldt, Mo., 345 S.W.2d 210, is also cited by defendants as recognizing the general rule that a conver-

sion of property to money by a life tenant does not enlarge the nature of his title. It probably does so but, on its facts, does not require a detailed analysis.

The critical question in our case is whether this particular will discloses an intent that the widow should have and retain in fee the proceeds of the Georgia real estate, if sold. Unless it does, the proceeds would belong to the defendants as remaindermen under the majority rule stated above, which is recognized specifically in Missouri. Item One (b), upon which plaintiff almost solely relies, devises all interest in the Georgia property to the wife *"for her life,"* if she survives; it gives to her the absolute power to dispose of the property during her life; it then provides to whom the property shall go "if she has not so disposed" of it, with these defendants named as the beneficiaries if Tunis Morton was deceased (as he was). Plaintiff says that if the testator had intended for the proceeds to go elsewhere than to his widow, he should have said so, and that the absence of such a provision creates an inference that they should be hers absolutely; in other words, that testator only intended for the remaindermen to take if the widow has not disposed of the property.

We cannot decide the case without a consideration of the whole will. The testator provided for his wife in Items Two and Three by a trust with the income to her for life, the right in the trustee to invade the corpus, and with a power of appointment over the corpus in her, to be exercised by will. In Item Four, testator also provided for an income to the wife for her life out of his residuary estate, with income also to Tunis and a sister after his wife's death. After the deaths of all three the entire residuary estate was bequeathed to these defendants. The testator described his residuary estate as "all of the rest, residue and remainder of my property and estate, both real and personal, of every nature whatsoever, and wherever located, belonging to me at my death, and including any lapsed or void bequest or devise here-

under * * *." This would certainly be sufficient to vest the money here in question in the defendants if the widow had no absolute interest.

When considered overall, we hold that it was the testator's intent to provide for his wife *for life,* with all remainders and residue to his named heirs, with one exception—namely, that she had the right to designate by will the taker or takers of the corpus of her trust under Items Two and Three. We further hold that the power of disposition given to her over the Georgia real estate, simply meant the right to sell it and thus substitute the proceeds for the property itself, subject to the same provisions as to devolution. We find no sufficient demonstration of an intent here to take the case out of the general rule, recognized in Missouri, that the proceeds of the sale simply took the place of the property itself, and were subject to the same disposition as would have been applicable to it. She had the right to *use* any part of the proceeds which she might choose, during her life. Nothing was given to the wife in fee by this will, except the personal effects. We see no reason why the testator would have intended to deviate solely on this item of real estate. We conclude that defendants are entitled to the net proceeds of the sale, with any increments thereon since the date of the widow's death; it then became their property. This was the ruling of the trial court.

We have not considered any question of Georgia law, principally for the reason that this controversy does not concern real estate located there but only money. The parties have not claimed the application of anything except Missouri law and general law. We have considered whether the money in question should be paid into the probate estate of the testator for the benefit of these defendants, but have concluded that this would merely cause an unnecessary, if not improper, complication. The real estate was located outside Missouri and would not have become a part of his

Missouri probate administration; presumably, it was not inventoried. The money may be distributed directly to the defendants by virtue of the judgment in this case. Certain so-called "bequests" provided in the widow's trust have been paid by the trustee. There is no reason why such payments should be deducted from the proceeds of the sale of the Georgia property, and no one has so claimed here. There are presumably other assets in the trust. We have not deemed it necessary to discuss specifically the theory and complications of a resulting trust.

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by HENRY I. EAGER, Special Commissioner, is adopted as the opinion of the Court.

DONNELLY, P. J., MORGAN, J., and HENLEY, Alternate Judge, concur.

FINCH, J., not sitting.