Mary Lee Moles HEIL, Claimant-Appellant,

v.

SHRINERS' HOSPITAL FOR CRIPPLED CHILDREN and Lafayette College, Respondents.

No. 23582.

Kansas City Court of Appeals.

Missouri.

Feb. 4, 1963.

S. Preston Williams, Wm. Harrison Norton, Wilbur L. Pollard, North Kansas City, Williams, Norton & Pollard, North Kansas City, of counsel for claimant-appellant.

David Skeer, Kansas City, for respondents.

DEW, Special Commissioner.

The appellant is the widow of J. Norman Heil, deceased. The respondents are beneficiaries under his last will and testament. The appellant petitioned the Probate Court

of Jackson County, Missouri, for a widow's allowance and for an order setting aside exempt property of her husband's estate. Her petition was denied. She appealed to the circuit court, which likewise denied her petition. From the latter judgment she has taken the present appeal to this court.

Under the authority of Section 472.250 RSMo 1959, V.A.M.S., the cause was tried anew in the circuit court. The facts were tried to the court without a jury. The evidence consisted not only of testimony produced in that court, but testimony, exhibits and records of a previous divorce case between appellant and her husband (tried but not determined before his death) and in the probate court on the matter of the allowances involved herein. From all of such voluminous sources of evidence, made a part of the record in the instant proceedings, the facts pertinent to the present appeal are sufficiently stated below.

The appellant filed suit for divorce in Clay County, Missouri, on June 6, 1957. In her petition she charged desertion and nonsupport. She prayed for $30,000 gross alimony, temporary alimony, suit money, attorney's fees and restoration of her maiden name. On June 24, 1957, she asked for and obtained a temporary restraining order to prevent her husband from molesting or threatening her in any manner. There is no record of any further proceeding on that order.

On July 1, 1957, Mr. Heil filed an answer to appellant's petition, admitting the marriage and generally denying the charges alleged. He also filed therewith his cross-petition, asking for a divorce on grounds of appellant's hostile, cruel and inhuman conduct toward him during their married status, such as to make harmonious and concordant cohabitation impossible; intolerable and excessive use of alcohol; a total lack of love or affection for him; a charge that she compelled him to leave home on June 3, 1957, without just cause or excuse; an allegation that before the separation she had threatened to shoot and kill him, and on one occasion had intentionally broken his glasses which were lying on a bureau, and had been otherwise abusive toward him. On July 30, 1957, the court denied appellant's motion for temporary alimony, but allowed her attorney's fees.

Omitted entirely from appellant's statement of facts and from the other contents of her brief filed herein, is the material fact in evidence, elicited from her own cross-examination in the probate court that after her husband had filed his cross-petition and the court had denied her temporary alimony, he wrote her a series of letters, beginning August 10, 1957, and until October 3, 1957, repeatedly expressing his love and affection for appellant, regretting the misunderstanding which prevailed between them, promising full co-operation on his part toward a reconciliation, and urging her to withdraw her petition and join him again in conjugal contentment. To these letters appellant made no reply. Their dates and substance will be noted more particularly hereinafter. For the requirements of the statutes, rules and decisions regarding the proper statement of facts to be contained in the appellant's brief in an appellate court, see Rule 83.05(a) (c), V.A.M.R.; Wipfler v. Basler, Mo., 250 S.W.2d 982, 984; Schoenhals v. Pahler, Mo., 272 S.W. 2d 228, 229.

On October 29, 1957, appellant filed an amended petition for divorce. She pleaded therein cruel and abusive conduct on Mr. Heil's part, including threats of bodily harm; failure to support her; his designs to procure her property by the marriage; his attention to other women; support of another woman unrelated to him; damage to her real estate business and a total lack of love and affection for her.

To appellant's amended petition Mr. Heil again filed an answer, generally denying the charges made and filed an amended cross-petition on November 7, 1957, wherein he made charges similar to those in his original cross-petition, and further alleged appellant married him with designs to ob-

tain his property and means to use in her extravagant business projects.

Appellant, on January 11, 1958, filed a second motion for temporary alimony and was again denied it. She took a change of venue on February 26, 1958, and the cause was transferred to the Ray County Circuit Court.

The divorce case was tried on July 23, 1958, and taken under advisement by the court. A decree of divorce was prepared by the court in favor of the defendant (Mr. Heil), but he died on August 23, 1958, at which time no decree had yet been entered. Thereupon appellant filed suggestion of Mr. Heil's death and moved for a dismissal of the divorce suit. Meanwhile administration had been started on Mr. Heil's will and the executor and other beneficiaries under the will moved to intervene in the divorce proceedings and sought to have the proposed decree in Mr. Heil's favor entered nunc pro tunc. Thereafter, on petition of appellant, this court issued its writ prohibiting the circuit judge of Ray County from entering the judgment for lack of jurisdiction due to Mr. Heil's prior death; ruled that any entry thereof already made to be a nullity; and ordered the divorce case to be dismissed. See Heil v. Rogers, Mo.App., 329 S.W.2d 388. The case was thereupon dismissed of record.

The will of J. Norman Heil was executed July 12, 1957e and filed in the Probate Court of Jackson County, Missouri on August 27, 1958. By its terms he gave, devised and bequeathed real and personal property in various states to various persons and in various degrees of ownership, but made no mention of the appellant. As his widow the appellant, on September 9, 1958, gave notice that she renounced the will and elected to take her legal share of the estate. On October 7, 1958, she filed the petition in question, asking the probate court to allow her a widow's allowance in the suggested amount of $9,000, and to make an order setting aside exempt property in the amount of $2,000.

The commissioner of the probate court, after an extended hearing and consideration of the evidence and briefs filed in the proceeding, ruled that appellant's claim should be denied for the reason that she had abandoned the deceased husband one whole year next prior to his death without reasonable cause, within the meaning of Section 474.-140 RSMo 1959, V.A.M.S. The petition was accordingly denied by the probate court.

Section 474.140 provides that "If any married person voluntarily * * * abandons his spouse without reasonable cause and continues to live separate and apart from his spouse for one whole year next preceding his death * * * such spouse is forever barred from his inheritance rights, homestead allowance, exempt property or any statutory allowances from the estate of the spouse unless such spouse is voluntarily reconciled to him and resumes cohabitation with him".

Upon appellant's appeal to the circuit court from the judgment of the probate court, the circuit court, on a review de novo, heard and considered testimony and other evidence extensively, of which we state herein so much as sufficient to consider the points here raised, omitting that which is cumulative, inconsequential or incompetent. The appellant's evidence tended to prove that she had been in dire need of capital with which to operate her business; that she advertised for investors and Mr. Heil replied and was willing to invest in her business project. Within four or five months thereafter they were married. They lived together 52 days. Since their first acquaintance Mr. Heil had loaned her $2,500, secured by real estate, and which had never been repaid; he had since given her $8,000 in cash, nice furniture and household effects and opened many charge accounts for her use; that he quarreled with her because she continually put money into the business and because she traded at stores in which she thought she could trade most economically.

The evidence showed that she lived at Gashland, Missouri with her parents, whom she supported. She and her husband lived there part time, and for some time in his apartment in Kansas City, and occasionally at his farm near Clinton, Missouri. At the time of the separation they were living at her home at Gashland.

Appellant testified that on June 2, 1957, Mr. Heil demanded that within 24 hours she close her business, discharge her employees and forfeit her leases. The next day he again complained that she would not quit her business and he left home. Appellant followed him to his car in order to ask him not to leave. He took some of his effects, including two revolvers in a leather case. He returned later that morning, refused a cup of coffee offered to him by appellant, refused to eat lunch, and again left the house that morning.

Appellant further testified that after the separation she learned that Mr. Heil was living in his apartment with another woman. Upon objection made and sustained, she changed her statement to "was occupying the same apartment". She said she met the woman at the time of Mr. Heil's death and that her name was Shirley Dumo. She saw her again at the funeral. She said Mrs. Dumo threw herself across Mr. Heil's casket and cried out: "Norman, Norman, take me with you".

In her cross-examination in the probate court, introduced in the circuit court, appellant was shown the letters written to her by Mr. Heil after the separation, as we have mentioned. They were addressed to her in different ways, such as—"Dear Mary Lee", "Dearest Mary Lee", "To my wife Mary Lee", "A love letter to Mary Lee". They were signed differently as, "With adoration, your one and only Norman", "Yours, in love with you", "Your loving husband", etc. Excerpts from some of the letters stated: "Call me again very soon and arrange your life to live with me as we started in April, 1955. I am patiently waiting for the reunion. I hope that

we are close to getting together"; "Stop in and see your lawyer and ask him to withdraw the suit. That is all you need to do. I have my heart out to you, and love you more than tongue can tell", "I love you with all my heart and soul and promise to give you the best there is available"; "Let's get down to business by going out over the weekend to the Ozarks. I am ready. Are you ready?".

Regarding these letters appellant identified them, acknowledged having received them and testified about them as follows: "Q. Now, the general tenor, since it is unnecessary to read the letters at this time, is professing love and seeking reconciliation, is that not—A. That is correct. Q. Does that permeate throughout the letters? A. It does. Q. Did you answer any of these letters? A. I didn't."

In respondents' behalf portions of Mr. Heil's testimony in the divorce case were introduced. He testified therein that he was 58 years of age, a graduate engineer and had been employed for 20 years by the U. S. Department of Commerce; that his income was about $7,000 per year. He stated that appellant had several times told him that she did not love him; that she wanted a divorce. He said he was afraid of her threats that she "would get rid" of him. He testified in the divorce case that on the day before the separation appellant telephoned him from her attorney's office and said she was going to file for divorce. At home she avoided him and refused to allow him to sleep in his bed or in the same bedroom, whereupon he was compelled to go to the basement to sleep. Appellant, however, followed him there and threatened him and said: "One of us as well be dead in the morning". She appeared, he said, to be in a furious temper, such "as I have never seen before". He said that on the morning of the separation, appellant, in an angry rage, picked up a hand mirror and smashed his spectacles which were lying on a bureau. He stated that appellant was frequently under the influence of liquor and often caused him embarrassment; that on one

occasion when they had company she did not appear and was found drunk in her car at a filling station; that often she was too drunk to attend to her household duties.

Norman Heil, in his deposition in the divorce case, denied that appellant had asked him not to leave, and denied the charge of his attention to other women. Respondents introduced in the instant proceeding the testimony of Shirley Dumo, taken in the probate court hearing. She testified that her former occupation was housekeeping; that she had worked as a housekeeper for several families in Kansas City; that she worked for Mr. Heil from June, 1958, until his death August 23, 1958; that he paid her $15 per week; that she worked for him when he lived in his apartment in Kansas City, and when he stayed at his farm near Clinton; that private quarters were furnished her for lodging at both places. She definitely denied any meretricious conduct on her part during her employment by Mr. Heil.

The circuit court in its decree in the case at bar ruled that the evidence showed Mr. Heil had made ample provision for appellant while they were living together; that her claim of nonsupport had not been sustained; that the separation of which she complained was at her own instance and its continuation was of her own desire and without reasonable cause within the meaning of Section 474.140. The decree affirmed the ruling of the probate court and denied appellant's petition for the allowances described.

█ This case having been tried without a jury, the present appeal to this court requires a review of the case "upon both the law and the evidence as in suits of an equitable nature. The judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses". Rule 73.01(d); Crawford v. Longston, Mo., 356 S.W.2d 581. The review here must, therefore, be de novo and under the above statutory directions. Peterson v. Peterson, Mo., 273 S.W.

2d 239, 240; Matter of Estate of Anna Lenhardt v. Lenhardt, Mo., 322 S.W.2d 170, 173.

The substance of appellant's two assignments of error is that (1) the circuit court erred in ruling the appellant unqualified to receive a widow's allowance and for an order setting aside exempt property out of the estate of J. Norman Heil on the ground that she had abandoned him for one whole year next preceding his death, without reasonable cause, within the meaning of Section 474.140, and (2) that those representing his estate are estopped from making such charge. We shall consider the points together.

On the issue of appellant's abandonment of her husband, appellant, in the divorce case and in the probate hearing, defended against the charge of abandonment on the general theory that the evidence had not sustained it. In the present review, although acknowledging that such was the primary issue in this case, she presents now the sole theory that "for the purpose of the argument we can assume that claimant-appellant's petition for divorce was filed in bad faith. The important fact is that when the testator filed his cross-petition for divorce the question of claimant-appellant's bad faith was immaterial for she could not be guilty of abandonment while he sought a divorce". She asserts that "When he filed his cross-petition on the latter date (July 1, 1957), he affirmatively demonstrated by that overt act that he wanted to be separated, did not want to be reconciled and therefore one of the necessary elements of abandonment within the meaning of Section 474.140 is absent, namely, there can be no abandonment without reasonable cause." Appellant states in her argument that "There is no evidence in this case that the testator at any time offered to dismiss his cross-petition, but, on the contrary, by filing same and further by appearing in court in the divorce action and testifying, he told not only the claimant-appellant, but the whole world, that he wanted the sepa-

ration and did not want to engage in further cohabitation".

■ Assuming then, as appellant proposes, that the separation was at her own instance, as found by the probate court and the circuit court, on substantial evidence thereof, how then could such conduct on her part be prevented from barring her from any right in her husband's estate at his death? The answer, we believe, must be found in the same statute, Section 474.140, which specifies the exceptions, to-wit: "unless such spouse is voluntarily reconciled to him and resumes cohabitation with him". It is admitted that she did neither.

"The rule that the express mention of one thing implies the exclusion of another would also weigh against the inclusion of the additional restriction, since, where special powers are expressly conferred or special methods are expressly prescribed for the exercise of power, other powers and procedures are excluded". Brown et al. v. Morris, 365 Mo. 946, 290 S.W.2d 160, 166. See also Kroger Grocery & Baking Co. v. City of St. Louis, 341 Mo. 62, 106 S.W.2d 435, 439, 111 A.L.R. 589; Milgram v. Jiffy Equipment Co., 362 Mo. 1194, 247 S.W.2d 668, 673, 30 A.L.R.2d 925.

The precise question submitted on this appeal is, therefore, whether the defense pleaded and pursued by J. Norman Heil in appellant's suit against him for divorce was such as to constitute acquiescence in, consent to and a nullification of appellant's abandonment of him, so as to exempt her at his death from the exception proviso of Section 474.140, above quoted. If the answer must be in the affirmative, then her disqualification to share as a widow in his estate as ruled by the probate and circuit courts is without the necessary statutory support. If the answer must be in the negative, then, under the statute and under the facts hypothesized, she is barred from sharing any rights in her husband's estate.

To determine whether the filing of a cross-petition for divorce by Norman Heil

and his participation in the trial in that behalf constituted such consent and acquiescence in the separation, it must be recalled that he was, at that time, being sued for a dissolution of his marriage and on charges of desertion and nonsupport, and also for permanent alimony in the sum of $30,000, along with attorney's fees, suit money and temporary alimony; that he had given appellant large sums of money before and following their marriage; that he wished to deny the charges against him and to protect his own rights as he thought them to be; that he was required to plead in appellant's suit against him or forfeit his defense; that to default in the case would likely result in the award to appellant of all of the relief asked for in her petition and would prevent him from securing any counter relief; that to file a general denial would certainly preclude him from recovering such counter relief; that to protect his rights, if any, to a divorce if appellant pursued the case to final judgment, it was necessary to file, along with his general denial, his counter-petition for divorce. But soon thereafter he wrote a series of letters to appellant, expressing his continued love and affection for her, deploring the differences that had prevailed between them and making fervent appeals to her to withdraw her divorce petition, to reconcile their differences and to resume cohabitation.

The appellant not only ignored her husband's supplications and overtures toward reconciliation, but she filed an amended petition alleging in greater detail her grounds for divorce, to which he then filed his amended answer and cross-petition.

Appellant in her brief likens the term "abandonment", as used in Section 474.140 to the term "desertion", used to refer to the ground for divorce expressed in the statutes as "absenting himself or herself without reasonable cause for the space of one year", and, therefore, cites divorce cases, mostly from foreign jurisdictions, holding those terms synonymous and interchangeable. Because of the distinguishable provisions in local statutes, distinctions as to facts

or the basic differences between the proceeding in the probate court here involved and an action for divorce, such cases are of little value as applied to the case at bar.

■ Section 474.140 "was intended to announce a principle of sound morality and public policy. * * * 'She cannot repudiate, while her husband lives, all the obligations of the marital relations, and take all the benefits which remain after he dies' ". Wilson v. Craig, 175 Mo. 362, 75 S.W. 419. " * * * [I]t declares a wholesome principle of public policy and morality which would prevent the courts of this state from giving sanction to such a claim." Lane v. St. Louis Union Trust Co., 356 Mo. 76, 201 S.W.2d 288, 291. Proceedings under that section are not dependent upon a previous divorce case, but such matters are evidentiary only in the probate proceeding.

■ Thus, upon assumed conditions suggested by appellant, namely, that she had sued her husband for divorce on a petition filed in bad faith, compelling him to plead and to participate in the suit in order to protect his rights therein, and notwithstanding his later overtures urged upon her to reconcile their differences, to withdraw her suit and to resume cohabitation, she continued to press her charges against him in the divorce action.

■ We are urged under the foregoing facts in evidence to reverse the circuit court and to direct it to enter a judgment requiring the probate court to allow the appellant the sum of $9,000 as his widow's allowance and to set off to her the exempt property of her husband's estate on the ground that by his conduct in filing a cross-petition for divorce and pursuing the same in court for more than one whole year next preceding his death he thus rendered inapplicable as to her the provisions of Section 474.140, which bars the inheritance rights of a surviving spouse in the estate of the deceased spouse, when guilty of abandonment. The record in this case does not justify such conclusion. Nor, upon the same facts can we properly rule that respondents are estopped from asserting appellant's failure to qualify under said statute.

The judgment of the circuit court should be affirmed and the claims of the appellant should be denied. The Special Commissioner so recommends.

PER CURIAM.

The foregoing opinion of DEW, Special Commissioner, is adopted as the opinion of the Court. The judgment of the circuit court is affirmed and the claims of the appellant are denied.

All concur.