**In the Matter of Virginia JELLECH, deceased.**

**No. 62421.**

Missouri Court of Appeals, Eastern District, Division Two.

June 8, 1993.

Danna, Soraghan, Stockenberg & Shaw, David R. Bohm, Roger P. Bernardt, St. Louis, for appellant.

Snyder, Wier, Shaller & Bachman, Richard A. Wier, Clayton, for respondent.

CRANDALL, Presiding Judge.

Petitioner, Velkjo Jellech, appeals from the orders of the circuit court denying his petitions, as the surviving spouse of Virginia Jellech, for the homestead allowance, pursuant to § 474.290, RSMo (1986), and for the exempt property allowance, pursuant to § 474.250, RSMo (1986). We affirm.

Virginia Jellech (decedent) died testate on October 28, 1991. Her will was admitted to probate on December 13, 1991. Article Three of her Last Will and Testament read as follows:

I have heretofore listed my Husband, Velkjo Jellech, as a beneficiary on my pension with the State of Missouri, and I am titled as joint tenant with my said Husband on property known and numbered as 2526 Clifton, St. Louis, Missouri 63139. I give, devise and bequeath all interest I may have in the foregoing pension and real property to my said Husband. I have consciously and deliberately not made any other bequests to my said Husband and it is my hope and wish

that he take whatever interest I may have in said property, and not make any claim to any other items of property which I may possess at the time of my death.

Decedent provided for several non-probate transfers to petitioner outside of her will. Those transfers were valued at approximately $100,000.00. The inventory value of decedent's estate was $29,608.93.

On January 22, 1992, petitioner filed two petitions in the circuit court, applying as the surviving spouse for a homestead allowance and an exempt property allowance from decedent's estate. On June 16, 1992, a consolidated hearing was held on the two petitions, at which petitioner, decedent's mother, and decedent's sister testified.

The evidence adduced at the hearing established that petitioner and decedent were married in 1954 and remained married until her death in 1991. Petitioner was employed first as a controller and then as an account manager at various hospitals, until 1984, when he was terminated from his employment. Since that time, he has worked only sporadically. Petitioner and decedent lived together in St. Louis, Missouri, until 1975. From 1975 to 1985, decedent lived in Springfield, Missouri, and taught at the state university. During this period of time, they saw each other on weekends. Decedent left her teaching position in 1985 and took a job as a technical writer in St. Louis, Missouri.

Decedent did not return, however, to the marital home which she and petitioner had purchased in anticipation of her returning to St. Louis. Thereafter, decedent and petitioner never again resided together as husband and wife. Instead, she withdrew $70,000.00 from a retirement account and bought a home which she titled in her and her mother's names. Decedent lived there with her mother until her own death in October 1991.

Petitioner testified that he and decedent maintained contact and saw each other about once a week, usually at her home for the purpose of "discuss[ing] business." They managed many of their financial affairs together and had joint bank and stock brokerage accounts. The marital home was titled in their joint names. Decedent helped petitioner financially by giving him money and by buying him an automobile.

He testified that, during their marriage, he didn't buy decedent birthday or anniversary gifts. He and decedent also had a "slight difference" of opinion over his "attire." He described himself as "frugal" and said that she was not. He claimed that their savings were the result of his efforts. Petitioner stated that he wanted to reconcile with decedent and suggested that they seek counseling. He claimed that he loved her and that he was faithful to her throughout their marriage. Although petitioner testified that he could not recall the reasons why decedent left in 1985, decedent's mother and sister testified without objection that decedent left because petitioner was critical of her and verbally abusive toward her. Decedent's sister related that decedent revealed to her that petitioner "was abusive. He couldn't leave [decedent] alone. Nothing she did was right.... He would retreat to the bathroom and close the door and stay there for hours; or he would go to his mother's and stay at his mother's house." Decedent's sister further testified that decedent strongly rejected any suggestion that she resume living with petitioner, stating, "Absolutely not. There is no way in the world I would ever go back there." Decedent consulted an attorney at one time about the possibility of seeking a dissolution of marriage, but never brought an action. Decedent's sister stated that decedent did not seek a dissolution because she feared petitioner would never agree to any terms and because a dissolution would be difficult for him and for his mother, with whom decedent was close.

Although he visited decedent frequently in the hospital during her final illness, he was angry with her because her illness was terminal. He was with her when she died; but did not pay any of her medical or funeral expenses. While she was ill, he constantly nagged her for money. Since her death, he has lived with his mother.

The trial court denied petitioner's claims for homestead and exempt property allowances on the basis that they were barred by § 474.140, RSMo (1986). The court held: "[P]etitioner as the result of his intolerable conduct toward decedent abandoned her without reasonable cause and lived separate and apart from her for the whole year preceding her death, and thereby pursuant to section 474.140 of the code is barred from receiving a homestead allowance and exempt property."

The sole issue on appeal is whether petitioner abandoned decedent, thereby forfeiting certain statutory rights to her estate. Petitioner first argues that the trial court misread § 474.140 because that statute specifically requires that there be actual abandonment to bar the spouse's rights. Section 474.140 provides, in pertinent part:

If any married person voluntarily leaves his spouse and goes away and continues with an adulterer or abandons his spouse without reasonable cause and continues to live separate and apart from his spouse for one whole year next preceding his death ... such spouse is forever barred from his inheritance rights, homestead allowance, exempt property or any statutory allowances from the estate of his spouse unless such spouse is voluntarily reconciled to him and resumes cohabitation with him.

■■■ The statute does not qualify the term "abandonment." Abandonment requires "a showing of an intention on the part of the one charged with it to give up completely the relation of husband or wife with no intention to resume it." *In re Clark's Estate*, 213 S.W.2d 645, 650 (Mo. App.1948). Constructive abandonment is based upon a spouse's conduct, from which the requisite intent is inferred. "Actual" and "constructive" are simply adjectives which describe types of abandonment, all of which are included in the generic term abandonment. We hold, therefore, that the application § 474.140 includes constructive abandonment.

■■■ Petitioner argues, in the alternative, that the facts of this case do not support a finding of abandonment. He relies on *Clark's Estate*, 213 S.W.2d at 645, to support his position. In *Clark's Estate*, this court held there was substantial evidence to support the jury verdict that a woman, who had not lived with her itinerant, preacher husband for a number of years, had not abandoned him. *Id.* at 651. The court found that the evidence demonstrated that the separation was by the couple's own mutual consent and agreement. *Id.* There was no showing of an intention on the part of wife to completely sever the marital relationship and to never resume it. *Id.* Merely living apart for one year or more is not sufficient to show abandonment. *Id.* Petitioner contends that, as in *Clark's Estate*, there was no intention on his part to completely sever the marital relationship.

*Clark's Estate* is distinguishable on its facts and thus not dispositive of the action before us. First, decedent left the marital home, so it is her act and intention we are considering, not petitioner's. Second, the separation was not accomplished by the mutual consent of the spouses, in that decedent steadfastly refused to resume cohabitation with petitioner. Because the act and intention were evinced by decedent's actions prior to her death and mutual consent to the separation was lacking, the question to be resolved is whether petitioner's actions constituted constructive abandonment of decedent.

Section 474.140 "was intended to announce a principle of sound morality and public policy." *Heil v. Shriners' Hospital for Crippled Children*, 365 S.W.2d 736, 742 (Mo.App.1963). A spouse cannot repudiate, while his wife lives, all his marital obligations, and then take all the benefits which remain after she dies. *Id.* If petitioner's constant verbal abuse and criticism amounted to constructive abandonment of decedent, the policy of § 474.140 should prevent him from taking all the benefits which remain following her death. "Misconduct of one spouse forcing the other to leave may be found to amount to constructive abandonment, depriving the spouse guilty of the misconduct of the right to share in the other's estate." E.L. Strobin,

Annotation, Abandonment, Desertion, or Refusal to Support on Part of Surviving Spouse as Affecting Marital Rights in Deceased Spouse's Estate, 13 A.L.R.3d 446, 471 (1967).

Although no Missouri case addresses the factual situation contained in the case before us, decisions from other jurisdictions have considered similar issues and are instructive in resolving the issue of constructive abandonment. In *High v. Bailey*, 107 N.C. 70, 12 S.E. 45 (1890), the surviving spouse was denied any interest in his deceased wife's estate on the theory of abandonment. The court found that wife was forced to leave the marital home in order to provide for herself and her family. *Id.* 12 S.E. at 46. In *In re Jac's Estate*, 355 Pa. 137, 49 A.2d 360, 364 (1946), the surviving spouse was also found to have constructively "deserted" his wife and was therefore denied any interest in her estate. In that case, the wife left the marital home because the surviving spouse's physical abuse forced her departure, and thereafter husband made no attempt to find or to support her. *Id.* 49 A.2d at 362.

In the case before us, we do not have the benefit of decedent's testimony as to the exact nature of petitioner's conduct which made it unreasonable for her to live with him. We have only the testimony of decedent's sister and mother and of petitioner himself. Decedent's mother and sister testified that decedent left the marital home because petitioner was "verbally abusive" toward her. In addition to his abusive conduct, throughout the marriage, petitioner was noncommunicative and unaffectionate with decedent. During periods of marital stress, he frequently returned to his mother's house. There also was a long history of physical separation between him and decedent. The evidence of his abusive conduct, in conjunction with the evidence of his other actions, was such that the trial court could conclude that decedent could not reasonably have been expected to live with petitioner.

Petitioner claims that his desire to resume the marital relationship and his continued involvement with decedent demonstrated his lack of intent to live apart from her permanently. With regard to their reconciliation, his intent to maintain the marital relationship can be inferred from his conduct; and he is presumed to know the natural consequences of his actions. He could not have subjected decedent repeatedly to indignities and then have expected her to live with him. As to petitioner's contention that his continued involvement with decedent negated the requisite intent, his ties with decedent were of a business nature, primarily the result of jointly held investments. Finally, the trial court was free to disbelieve petitioner's testimony about his intent to maintain the marital relationship.

There was substantial evidence that the continuous course of conduct of petitioner drove decedent from the marital home. Petitioner and decedent lived apart for years with their only connection being that of a financial nature. Although a precise definition of marriage is illusive, it is clear from the record that a marriage between petitioner and decedent did not exist.

The trial court did not err in applying § 474.140 to defeat petitioner's statutory rights to decedent's estate. The orders of the trial court are affirmed.

PUDLOWSKI and GRIMM, JJ., concur.