Ms. Heil appealed the June 30, 2015 Judgment to this court on July 29, 2015. By Order dated December 15, 2015, we dismissed Ms. Heil's appeal as untimely. We observed that the Judgment, an interlocutory probate court order, was final immediately upon its entry, and that Ms. Heil's permissive right of appeal pursuant to section 472.160 required a notice of appeal to be filed within ten (10) days of the Judgment's entry. However, though Ms. Heil's permissive appeal was not timely filed, she remained entitled to appeal the interlocutory Judgment following final settlement of Decedent's estate. See In re Kraus , 318 S.W.3d 274, 277 (Mo. App. W.D. 2010). The trial court entered its order approving a final settlement of Decedent's estate on May 9, 2017. Ms. Heil filed this timely appeal from the Judgment on May 11, 2017.
Standard of Review
The judgment of a circuit court entered in a probate proceeding "will be upheld on appeal unless it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law." In re Estate of Hayden , 258 S.W.3d 505, 508 (Mo. App. E.D. 2008) (citing Murphy v. Carron , 536 S.W.2d 30, 32 (Mo. banc 1976) ). "However, the construction of a statute is a question of law, which is reviewed de novo. " Id. (citing Delta Air Lines, Inc. v. Dir. of Revenue, State of Mo. , 908 S.W.2d 353, 355 (Mo. banc 1995) ; Wood ex rel. Estate of Lisher v. Lisher , 187 S.W.3d 913, 915 (Mo. App. W.D. 2006) ).
Analysis
Though Ms. Heil asserts two points on appeal, they claim the same error. Each point alleges legal error in denying Ms. Heil's section 474.160 election to take her spousal share against Decedent's will because section 474.140 requires martial misconduct in order to disqualify a spouse from taking the election, and the trial court found no misconduct.[3] Ms. Heil's points relied on, which will be addressed collectively, require us to construe section 474.140.
*387 "The primary rule of statutory construction is to determine the intent of the legislature from the plain and ordinary meaning of the words used in the statute." In re Estate of Hayden , 258 S.W.3d at 508 (citation omitted). " 'Courts may look outside the plain meaning of the statute only when the language is ambiguous or would lead to an illogical result.' " Id. (quoting State ex rel. Broadway-Washington Associates, Ltd. v. Manners , 186 S.W.3d 272, 275 (Mo. banc 2006) ). "To give effect to the legislature's intent, the words should be construed within the context of the legislature's purpose in enacting the law." Id. (citing State v. Schleiermacher , 924 S.W.2d 269, 276 (Mo. banc 1996) ). "In an endeavor to determine the legislative intent, it is appropriate to consider [the] history [of the statute], the presumption that the legislature had knowledge of the law, the surrounding circumstances, and the purpose and object to be accomplished."" Callahan v. Cardinal Glennon Children's Hosp. , 901 S.W.2d 270, 273 (Mo. App. E.D. 1995) (citing Person v. Scullin Steel Co. , 523 S.W.2d 801, 803 (Mo. banc 1975) ).
Section 474.160.1 permits a surviving spouse to take against the will of a deceased spouse. However, section 474.140 provides a defense to such a claim:
If any married person voluntarily leaves his or her spouse and goes away and continues with an adulterer or abandons his or her spouse without reasonable cause and continues to live separate and apart from his or her spouse for one whole year next preceding his or her death, or dwells with another in a state of adultery continuously, such spouse is forever barred from his or her inheritance rights, homestead allowance, exempt property or any statutory allowances from the estate of his or her spouse unless such spouse voluntarily reconciled to him or her and resumes cohabitation with him or her.
Ms. Heil argues that section 474.140 requires "marital misconduct" as a condition of disqualifying her from the right to take her spousal share pursuant to section 474.160.1. However, the phrase "marital misconduct" does not appear in section 474.140.[4] Instead, section 474.140 identifies scenarios which disqualify a spouse from enforcing various inheritance rights, including the right to elect to take a spousal share against a decedent's estate pursuant to section 474.160.1.
One such scenario is abandonment. Relevant to this case, section 474.140 provides that "[i]f any married person voluntarily *388 leaves ... her spouse and ... abandons ... her spouse without reasonable cause and continues to live separate and apart from ... her spouse for one whole year next preceding his ... death, ... such spouse is forever barred from ... her ... statutory allowances from the estate of ... her spouse. ..." Here, the trial court found that: (i) Ms. Heil and Decedent were married; (ii) Ms. Heil voluntarily left the Decedent; (iii) Ms. Heil did so without reasonable cause; (iv) Ms. Heil continued to live separate and apart from Decedent for one whole year next preceding Decedent's death; and (v) Ms. Heil abandoned the Decedent. Ms. Heil has adopted these findings as her own. [Appellant's Brief, p. 2] The trial court's unchallenged findings, which track the plain language of section 474.140, support the conclusion that Ms. Heil is disqualified from recovering her spousal share from Decedent's estate.
Ms. Heil nonetheless argues that the trial court committed legal error because the trial court also found she did not commit marital misconduct,[5] and section 474.140 requires marital misconduct as a condition of disqualification. Ms. Heil relies on cases which have held, generally, that section 474.140 is intended to declare and protect principles of public policy and morality. See, e.g., Lane v. St. Louis Union Trust Co., 356 Mo. 76, 201 S.W.2d 288, 290-91 (Mo. 1947) ; Wilson v. Craig , 175 Mo. 362, 75 S.W. 419, 431 (Mo. 1903). Indeed, this is the accepted purpose of section 474.140. Matter of Jellech , 854 S.W.2d 828, 830 (Mo. App. E.D. 1993) (holding that "[s]ection 474.140 'was intended to announce a principle of sound morality and public policy' ") (quoting Heil[6] v. Shriners' Hospital for Crippled Children, 365 S.W.2d 736, 742 (Mo. App. K.C. Dist. 1963 ). Specifically, "[a] spouse cannot repudiate, while his [or her] [spouse] lives, all his [or her] marital obligations, and then take all the benefits which remain after [he or] she dies." Id. (citing Heil, 365 S.W.2d at 742). The trial court's finding that Ms. Heil abandoned Decedent based on the circumstances in this case is consistent with this recognized public policy. The trial court essentially found that Ms. Heil essentially repudiated all of her marital obligations while her spouse was living, foreclosing her from taking the benefits thereof after her spouse died
Next, Ms. Heil argues that separation alone does not constitute abandonment. We agree. Our cases have consistently concluded that "[m]erely living apart for one year or more is not sufficient to show abandonment." Id. (citing In re Clark's Estate , 213 S.W.2d 645, 650 (Mo. App. St. L. Dist. 1948) ). Rather, "[a]bandonment requires 'a showing of an intention on the part of the one charged with it to give up completely the relation of husband or wife with no intention to resume it.' " Id. (quoting In re Clark's Estate , 213 S.W.2d at 650 ). The trial court found that Ms. Heil and Decedent were living separately and had for more than a year, and also found that Ms. Heil's conduct after and during the separation reflected her intent to give up completely the relation of husband and wife with no intention to resume it.
*389 Finally, Ms. Heil argues that abandonment cannot be found in the presence of consensual separation. She cites Reeve v. Reeve , 160 S.W.2d 804, 807 (Mo. App. K.C. Dist. 1942), to argue that abandonment requires: (i) cessation from cohabitation, (ii) an intention on the deserter's part not to resume the same, and (iii) an absence of consent to the separation by the other spouse. Reeve addressed a statute which permitted an award of temporary maintenance when one spouse "abandons" the other without good cause. Id. at 807 (referring to sec. 3376, RSMo. 1939, amended and now codified at section 452.130). Ms. Heil argues that the definition ascribed to the term "abandon" in the context of temporary maintenance awards must also be ascribed to the term "abandon" as used in section 474.140. We disagree. The policies which underlie an award of pendent lite maintenance pending the final resolution of dissolution proceedings are not aligned with the policies intended to be fostered by section 474.140. In the context of section 474.140, abandonment is an inherently factual inquiry that turns on a "showing of an intention on the part of the one charged with it to give up completely the relation of husband or wife with no intention to resume it." In re Clark's Estate, 213 S.W.2d at 650. Consensual separation is not prohibitive of such a finding.
In In re Clark's Estate , the court addressed the definition of "abandonment" relied on by Ms. Heil, and observed it to be applicable to a different context-a wife's statutory right to file a separate suit for maintenance based on a husband's abandonment. Id. (citing Reeve , 160 S.W.2d at 807 ). In re Clark's Estate did not conclude that consensual separation precludes a finding of abandonment pursuant to section 474.140. Instead, In re Clark's Estate viewed consensual separation as a fact to be weighed in determining whether the evidence supports an inference that a spouse voluntarily, and without reasonable cause, abandoned the deceased spouse by giving up completely the relation of husband and wife with no intent to resume same. 213 S.W.2d at 646-651.
We similarly conclude that consensual separation is a relevant fact, but not a dispositive one, in determining whether a spouse has "abandoned" his or her spouse for purposes of section 474.140. Our conclusion fosters the public policy underlying section 474.140 that "[a] spouse cannot repudiate, while his [or her] [spouse] lives, all his [or her] marital obligations, and then take all the benefits which remain after [he or] she dies." Matter of Jellech , 854 S.W.2d at 830 (citing Heil , 365 S.W.2d at 742 ).[7] Though consensual separation may weigh against an inference that a spouse intended to give up completely on the relation of husband and wife without reasonable cause, it does not summarily foreclose the inference. It is thus possible, as was the case here, for a trial court to find that pursuant to section 474.140, each spouse has abandoned the other, rendering each disqualified from enforcing inheritance rights against the other's estate. Accord In re Williamson's Estate , 123 Conn. 424, 196 A. 770, 771-72 (1937) (finding spouse disqualified under *390 statute prohibiting recovery of statutory share if spouse abandoned the other without sufficient cause and continued the abandonment to the time of the other's death, because "even though a husband and wife separate by mutual consent, an abandonment may take place within the meaning of the statute if thereafter the surviving spouse evinced an intent not to resume [the] marital relationship").[8]
The trial court did not err in applying section 474.140 to disqualify Ms. Heil from electing to take her spousal share against Decedent's estate, having found that Ms. Heil abandoned Decedent voluntarily and without reasonable cause.
All concur

Although Ms. Heil's Brief asserts two points on appeal, the argument portion of her Brief is not assigned to either point relied on. Rule 84.04(e) provides that "[t]he argument [in the appellant's brief] shall substantially follow the order of 'Points Relied On.' The point relied on shall be restated at the beginning of the section of the argument discussing that point. The argument shall be limited to those errors included in the 'Points Relied On.' " Ms. Heil's Brief is thus defective. We exercise our discretion to consider Ms. Heil's points relied on, ex gratia , because we discern no material difference between them, and the argument portion can thus be fairly attributed to both points.

Though not argued by Ms. Heil, we are aware that the title of section 474.140 is "Inheritance and statutory rights barred on misconduct of spouse." " '[T]he title of a statute is necessarily a part thereof and is to be considered in construction,' if, '[b]y title to the act, [one] mean[s] the title as enacted by the legislature.' " Gurley v. Missouri Bd. of Private Investigator Examiners , 361 S.W.3d 406, 413 (Mo. banc 2012) (quoting Bullington v. State , 459 S.W.2d 334, 341 (Mo. 1970) (emphasis in original) ). However, " '[t]he bold-faced headings (or 'catch words') assigned to each title, chapter and individual section throughout the Revised Statutes are the work solely of [the] codification process and, therefore, shed no light whatsoever on the General Assembly's purposes or intent.' " Farmer's Alliance Mutual Insurance Company v. Daniels Plumbing , 496 S.W.3d 644, 650 (Mo. App. W.D. 2016) (quoting State v. Wade , 421 S.W.3d 429, 441 (Mo. banc 2013) (Wilson, J., concurring) ). "These headings 'are not to be considered in construing our statutes; these indicia are mere arbitrary designations inserted for convenience of reference by clerks or revisors, who have no legislative authority and are therefore powerless to lessen or expand the letter or meaning of the law.' " Id. (quoting State ex rel. Agard v. Riederer , 448 S.W.2d 577, 581 (Mo. banc 1969) ). Thus, the heading assigned to section 474.140 is neither controlling nor relevant to our construction of the statute.

In finding as it did in the Judgment that Ms. Heil did not commit adultery or "marital misconduct," the trial court apparently ascribed the same traditional meaning to the phrase as is endorsed by Ms. Heil in this appeal. However, because section 474.140, by its plain terms, does not require a finding of "marital misconduct," the trial court's finding that Ms. Heil did not commit marital misconduct is largely irrelevant.

The common case name is purely coincidental.

In Heil , a spouse defended against the application of section 474.140 to disqualify her right to take a statutory allowance following her husband's death, arguing that before his death, husband had filed a petition for dissolution, demonstrating his consent to their separation. 365 S.W.2d at 740-41. Wife's argument was rejected. The Heil court concluded that despite evidence that husband counter-sued for dissolution of their marriage, the factual record as a whole supported the finding that wife abandoned husband. Id. at 741-42.

We recognize that as a general principle, consensual separation is often characterized as preventing a finding of abandonment. See, generally , E.L. Strobin, Annotation, Abandonment, Desertion, or Refusal to Support on Part of Surviving Spouse as Affecting Marital Rights in Deceased Spouse's Estate, 13 A.L.R. 446, sections 5, 9 and 10(b) (1967). However, this result is not a function of application of a disqualifying principle of law, but instead reflects the inherently factual nature of determining whether abandonment has occurred. "Insofar as issues of fact are involved, there seems to be little doubt that a surviving spouse who has for some time been separated from the decedent is in an unsympathetic position in claiming an interest in the estate." Id. at section 2. Separation, even if consensual, can nonetheless support a finding of abandonment if the totality of the facts support the reasonable inference that a spouse intended to completely give up the relation of husband and wife with no intention of resuming same. This inference is particularly likely where, as in this case, substantial time transpires after separation over which a spouse is demonstrated to have abdicated the natural indicia of commitment to a marriage, whether financially, emotionally or otherwise.