In re the ESTATE OF Leonilda
HAYDEN, Deceased.

Martin M. Lipsitz, Personal Representative of the Estate of Leonilda Hayden, Respondent,

Suzanne M. Kateman, Phyllis A. Audrain, Mary Ann Prueitt, and Kenneth L. Hayden, Appellants.

No. ED 90403.

Missouri Court of Appeals,
Eastern District,
Division Four.

June 30, 2008.

Kathryn P. Taylor, Martin M. Lipsitz, St. Louis, MO, for Respondent.

Gregory Francis Hoffman, St. Louis, MO, for Appellant.

SHERRI B. SULLIVAN, J.

*Introduction*

Suzanne M. Kateman, Phyllis A. Audrain, Mary Ann Prueitt, and Kenneth L. Hayden (Appellants), appeal from the judgment of the Probate Division of the Circuit Court (Probate Court) holding 3033 Doddridge, Maryland Heights, Missouri (the Property) may be recovered by the Estate of Leonilda A. Hayden (Estate) for purposes of satisfying the claims of creditors against the Estate.

*Factual and Procedural Background*

The facts of this case are undisputed. On June 11, 1979, Leonilda A. Hayden (Decedent) executed a Quit Claim Deed (Deed) conveying the Property to: "[Decedent] for and during her natural life, with full power in her to sell, mortgage or lease the fee simple title, but with remainder as to any part undisposed of to [Appellants] and to the heirs and assigns of said remaindermen forever." The Deed was recorded on June 14, 1979, in the Office of the Recorder of Deeds of St. Louis County.

Between July 2003 and May 2005, Decedent applied for and received Medical Assistance Benefits (Medicaid) through the Department of Social Services of the State of Missouri (DSS) totaling $95,177.35. On June 7, 2005, Decedent died without having exercised her power to sell under the Deed.

On June 7, 2006, DSS filed a petition for issuance of letters testamentary or of administration. On the same date, DSS also filed a claim against the Estate for Medicaid benefits paid by DSS to Decedent.

On July 20, 2006, the Probate Court granted the request for issuance of letters and appointed Martin M. Lipsitz (Respondent) as personal representative. On August 29, 2006, Letters of Administration for supervised administration were issued to Respondent. On October 10, 2006, Respondent filed a two-count petition against Appellants seeking to take charge and sell the Property and an action in accounting seeking to recover the Property and bring it into the Estate in order to pay the claim filed by DSS under Section 473.398.[1]

On October 4, 2007, the Probate Court entered judgment in favor of Respondent in the accounting action, holding that the transfer of the Property to the remaindermen on the termination of Decedent's life tenancy was a recoverable transfer as defined by Section 461.300.10(4)[2] and, therefore, the Estate could recover the Property for purposes of satisfying the claims of creditors against the Estate.

*Points on Appeal*

In their first point, Appellants argue the Probate Court erred when it determined that the transfer of the Property to Appellants upon the termination of Decedent's life estate was a recoverable transfer under Section 461.300 because the transfer was neither a "nonprobate transfer" nor an "other transfer" of Decedent's property within the meaning of Section 461.300.10(4).

In their second point, Appellants argue the Probate Court erred when it applied the recoverable transfer provisions of Section 461.300 because it constituted a retroactive application of the statute in violation of the *ex post facto* provisions of Article I, Section 13 of the Constitution of Missouri.

1. All references to Section 473.398 are to RSMo 2004.

2. All further references to Section 461.300 are to RSMo 2004, unless otherwise indicated.

### Standard of Review

■ The judgment of the Probate Court will be upheld on appeal unless it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). However, the construction of a statute is a question of law, which is reviewed *de novo*. *Delta Air Lines, Inc. v. Director of Revenue, State of Mo.*, 908 S.W.2d 353, 355 (Mo. banc 1995); *Wood ex rel. Estate of Lisher v. Lisher*, 187 S.W.3d 913, 915 (Mo.App. W.D.2006).

### Discussion

#### Point I: Property Recoverable Under Section 461.300

■ The primary rule of statutory construction is to determine the intent of the legislature from the plain and ordinary meaning of the words used in the statute. *Bari v. Lindell Trust Co.*, 996 S.W.2d 655, 659 (Mo.App. E.D.1999). "Courts may look outside the plain meaning of the statute only when the language is ambiguous or would lead to an illogical result." *State ex rel. Broadway–Washington Associates, Ltd. v. Manners*, 186 S.W.3d 272, 275 (Mo. banc 2006).

■ To give effect to the legislature's intent, the words should be construed within the context of the legislature's purpose in enacting the law. *State v. Schleiermacher*, 924 S.W.2d 269, 276 (Mo. banc 1996). Every word, clause, sentence and section of a statute should be given meaning. *Bari*, 996 S.W.2d at 659. It is appropriate for the court to consider the history of the history of the statute. *Callahan v. Cardinal Glennon Children's Hosp.*, 901 S.W.2d 270, 273 (Mo.App. E.D. 1995).

■ Section 461.300.1 provides that "[e]ach recipient of a recoverable transfer of a decedent's property shall be liable to account for a pro rata share of the value of all such property received, to the extent necessary to discharge claims remaining unpaid after application of the decedent's estate[.]" A "recoverable transfer" is defined as:

"a nonprobate transfer of a decedent's property under sections 461.003 to 461.081 and any other transfer of a decedent's property other than from the administration of the decedent's probate estate that was subject to satisfaction of the decedent's debts immediately prior to the decedent's death, but only to the extent of the decedent's contribution to the value of such property."

Section 461.300.10(4).

A "nonprobate transfer" is defined as:

"a transfer of property taking effect upon the death of the owner, pursuant to a beneficiary designation. A nonprobate transfer under sections 461.003 to 461.081 does not include survivorship rights in property held as joint tenants or tenants by the entirety, a transfer to a remainderman on termination of a life tenancy"

Section 461.005(7).[3] As this definition specifically excludes transfers to remaindermen on the termination of a life tenancy, the parties agree that the issue becomes whether the transfer of Decedents property was a recoverable transfer as "any other transfer that was subject to satisfaction of the decedents debts immediately prior to decedents death."

Appellants argue the only language in the statute indicating what is meant to be covered by the term "other transfer" is found in subsection 8 of Section 461.300, which provides that certain property held

---

**3.** All further references to Section 461.005 are to RSMo 2005, unless otherwise indicated.

in trust or in joint tenancy with right of survivorship is subject to recovery. Appellants alternatively argue the "other transfer" clause is limited by the exclusions under the definition of a nonprobate transfer under Section 461.005(7). Respondent contends Section 461.300 provides no indication the legislature intended to limit the definition of recoverable "other transfer[s]" by subsection 8 or by Section 461.005(7).

The meaning of the "any other transfer" clause is ambiguous because it is capable of different, reasonable meanings. See *Spradlin v. City of Fulton*, 982 S.W.2d 255, 258 (Mo. banc 1998). We find that it is unclear whether the legislature intended "other transfers" to be limited to the transfers listed in Section 461.300.8 or by the exclusions listed in Section 461.005(7).

*Legislative History of Section 461.300:*

*Section 461.071 RSMo 1989*

Section 461.300 derives from Section 461.071 [4] within the Nonprobate Transfers Law enacted in 1989. Section 461.071.1 provided that:

> "beneficiaries that receive a nonprobate transfer of decedent's property under section 461.003 to 461.008 and the person who receives *other property of the decedent* by a transfer other than from the administration of the decedent's probate estate *that was subject to the satisfaction of the decedent's debts during the decedent's lifetime,* shall be liable to account to decedent's personal representative."

This section specifically provided that it did not apply to death benefits paid pursuant to a life or accidental death insurance policy, contract, trust, plan or law or to survivorship rights in property held as tenants by the entirety. Subsection 3 of this section provided for an accounting action against recipients of property held in trust and in joint tenancy with rights of survivorship. This is significant because survivorship rights were expressly excluded from the definition of a nonprobate transfer under Section 461.005(5) RSMo 1989, as they also are under the current Section 461.005(7). We agree with the Probate Court's determination that this exclusion indicates that the legislature did not intend to limit the property recoverable as "other property" under Section 461.071.1 by the exclusions located in the definition of nonprobate transfers in 461.005(5) RSMo 1989.

*1995 Legislative Amendments*

In 1995, the subject matter of Section 461.071 was moved to the newly created Section 461.300, outside the Nonprobate Transfers law "because it applies to property received other than by a 'nonprobate transfer' as defined in Section 461.005." [5]

The new section 461.300 RSMo 1995 provided that:

> "[e]ach beneficiary who receives a nonprobate transfer of a decedent's property under sections 461.003 to 461.081 and each person who receives *other property by a transfer* other than from the administration of the decedent's probate estate *that was subject to satisfaction of the decedent's debts immediately prior to the decedent's death,* but only to the extent of the decedent's contribution to the value of such other property, shall be liable to account to the decedent's personal representative."

---

4. All further references to Section 461.071 are to RSMo 1989.

5. Borron, Probate and Surrogate Law Manual, 4A Mo. Practice § 461.300, Committee Comments, pg. 624.

This section "[c]larifies that, aside from 'nonprobate transfers' as defined in the Nonprobate Transfers Law, the section applies only to property which would have been subject to the decedents debts immediately prior to his death (rather than at any time during the decedents life), and only to the extent of the decedents contribution to the value." [6]

In addition, the exclusions in Section 461.071.1 for insurance death benefits and survivorship rights in property held as tenants by the entirety were removed, as they were deemed unnecessary based on the language of the general provision.[7] Some of the content of the former subsection 3 of Section 461.071 was moved to the new subsection 8 of 461.300 RSMo 1995, including, as already noted, the provision that property held in trust and in joint tenancy with right of survivorship that was subject to the satisfaction of the decedents debts immediately prior to the decedents death was recoverable.[8]

These changes are significant because while Section 461.005(7) RSMo 1995 (formerly 461.005(5) RSMo 1989), continued to expressly exclude survivorship rights in property held in tenancy by the entirety from the definition of "nonprobate transfers," the 1995 Committee Comments to Section 461.300 made it clear that such rights were recoverable under the section. Based on that, the Probate Court found there was no link between the specific exclusions in the definition of a "nonprobate transfer" under Sections 461.005(7) RSMo 1995 and 2005 and the "other transfer" language of Sections 461.300.1 RSMo

1995 and 461.300.10(4) RSMo 2004. The Court also found Appellants' argument that the "other transfer" language of Section 461.300.1 was limited by the specific transfers listed in Section 461.300.8 was dispelled by the fact that rights to succession in tenancy by the entirety property were not included in Section 461.300.8 RSMo 1995, yet the 1995 Committee Comments indicated these types of transfers fell within the scope of the general "other transfer" language of Section 461.300.1 RSMo 1995.[9]

### 2004 Legislative Amendments

Section 461.300 was revised in 2004, at which time, the phrase "recoverable transfer" was added to 461.300.1 to replace the 1995 language relating to a beneficiary's receipt of "a nonprobate transfer of a decedent's property" and "other property by a transfer that was subject to satisfaction of the decedent's debts immediately prior to the decedent's death[.]" However, the change was not substantive as the phrase recoverable transfer was defined in a new subsection 10 of 461.300, as already noted, as "a nonprobate transfer of a decedent's property under sections 461.003 to 461.081 and any other transfer of a decedent's property other than from the administration of the decedent's probate estate that was subject to satisfaction of the decedent's debts immediately prior to the decedent's death[.]" Section 461.300.10(4).

We find the exclusions to "nonprobate transfers" under 461.005(7) do not limit what is a recoverable transfer under the

6. Borron, Probate and Surrogate Law Manual, 4A Mo. Practice § 461.300, Committee Comments, pg. 624.

7. Borron, Probate and Surrogate Law Manual, 4A Mo. Practice § 461.300, Committee Comments, pg. 625.

8. Section 461.300.8 RSMo 1995; Borron, Probate and Surrogate Law Manual, 4A Mo. Practice § 461.300, Committee Comments, pg. 625.

9. Borron, Probate and Surrogate Law Manual, 4A Mo. Practice § 461.300, Committee Comments, pg. 625.

"other transfer" language of Section 461.300.10(4). It is clear that a recoverable transfer under 461.300.1 is broader than the definition of a "nonprobate transfer[,]" otherwise there would be no reason to include the "other transfer" language throughout the history of the section and, in the most current version, within the definition of a recoverable transfer. The 1995 Committee Comments indicating the subject matter of Section 461.071 was specifically moved outside of the Nonprobate Transfers Law because it applied to property received other than by a "nonprobate transfer" implies that even those items specifically excluded under the definition of a "nonprobate transfer" could be considered "recoverable transfers" under Section 461.300. This is further supported by the fact the 1995 Committee Comments to Section 461.300 clearly state that survivorship rights in property held in tenancy by the entirety were recoverable under Section 461.300, even though this property is specifically excluded under the definition of a "nonprobate transfer[.]"

In addition, we reject Appellants' argument that the legislature intended the "any other transfer" language of Section 461.300.1 to be limited to the transfers set forth in Section 461.300.8. Initially, we note that had the legislature intended such, it need only to have replaced the general "any other transfer" language with the more specific subsection 8 transfers. Appellants' argument also contradicts the 1995 Committee Comments indicating tenancy by the entirety property was recoverable under Section 461.300.1, even though this property is not included in Section 461.300.8.

*Whether the Transfer of the Property was "any other transfer" Pursuant to Section 461.300*

Upon our finding that recoverable transfers under Section 461.300 are not limited to the transfers listed in Section 461.300.8 or by the exclusions to "nonprobate transfers" under Section 461.005(7), the question becomes whether the facts of this case present "any other transfer of a decedent's property . . . that was subject to satisfaction of the decedent's debts immediately prior to the decedent's death."

Appellants argue they were transferred their interest in the Property with the 1979 Deed and that their seisin of the Property following the termination of Decedent's life estate was not a "transfer" under Section 461.300. Appellants argue Section 461.300 only applies to "transfers" that are "effective upon the death of the decedent." However, this is an almost identical definition of a "nonprobate transfer" under 461.005(7). Section 461.005(7) (providing a nonprobate transfer is "a transfer of property taking effect upon the death of the owner, pursuant to a beneficiary designation."). Under Appellants' definition, the "other transfer" language is little more than a rephrasing of a Section 461.005(7) "nonprobate transfer." Notably, Appellants' characterization runs counter to Section 461.005(7), in that the section characterizes the seisin of remaindermen on the termination of a life tenancy as a transfer. Section 461.005(7) ("A nonprobate transfer . . . does not include . . . a *transfer* to a remainderman on termination of a life tenancy . . . .").

The word "transfer" is capable of many meanings, including "[t]o convey or remove from one place or one person to another; to pass or hand over from one to another, esp[ecially] to change over the possession or control of." Black's Law Dictionary 1504 (7th ed.1999). Based on the plain meaning of the word "transfer" we find Appellants' seisin of the Property upon the termination of Decedent's life estate constitutes a "transfer" under Section 461.300.

Next, we must determine whether the Property was subject to satisfaction of Decedent's debts immediately prior to her death.

■ A life estate is an alienable interest and is, therefore, subject to seizure and sale under execution. *Gordon v. Tate*, 314 Mo. 508, 284 S.W. 497, 498 (banc 1926). In *Ragan v. Looney*, 377 S.W.2d 273, 281 (Mo. banc 1964), the Missouri Supreme Court noted, in relation to contingent remainders, that "'whatever the debtor can voluntarily convey can also be reached by his creditors[.]'" *Id.*, quoting Simes & Smith, Future Interests, §§ 1923–1925.

Appellants do not dispute that Decedent's life estate was generally subject to seizure and attachment for Decedent's debts, but instead argue that creditors could only reach Decedent's life estate and could not reach the interest of the remaindermen in order to satisfy Decedent's debts. Appellants cite *St. Louis Union Trust Company v. Morton*, 468 S.W.2d 193 (Mo. banc 1971), for the proposition that Decedent's creditors could only get the commuted value of Decedents life estate, a nominal amount, but the balance of the proceeds would have belonged to the Appellants as remaindermen. *Morton* is distinguishable in that the recipient of the life estate in *Morton* was not also the grantor, so the recipient had only a life estate with the power of disposition. *Id.* at 194–196.

In this case, Decedent owned the property in fee simple prior to execution of the Deed. Decedent then conveyed the property to herself "for and during her natural life, *with full power in her to sell, mortgage or lease the fee simple title*, but with remainder as to *any part undisposed* of to [Appellants] and to the heirs and assigns of said remaindermen forever." The fact that Decedent owned the property in fee simple and granted herself a life estate with the power of disposition results in

Decedent having a life estate with the power to *revoke*. *St. Louis County Nat. Bank v. Fielder*, 364 Mo. 207, 260 S.W.2d 483, 484–485 (banc 1953).

This distinction, between a life estate with the power of disposition or a life estate with the power to revoke, has significant consequences. In *Kalinoski v. Kalin*, 829 S.W.2d 24, 25 (Mo.App. E.D.1992), the decedent conveyed to herself a life estate with the power to revoke and the remainder to her daughter. Subsequently, the decedent reconveyed the property to herself. *Id.* On appeal, the appellant challenged the validity of the decedents subsequent reconveyance to herself as a valid exercise of the decedents power to revoke. *Id.* The Court found the decedents revocation was valid, and that a revocation could be exercised without valuable consideration. *Id.* at 26. The Court noted that to find otherwise, "would have the effect of eliminating powers to revoke and allow the remainderman to frustrate the intent of the grantor by turning powers to revoke into mere powers to sell." *Id.* at 26–27. See also *Jamieson v. Jamieson*, 912 S.W.2d 602, 604–605 (Mo.App. E.D.1996).

Here, Decedent had a life estate with the power to revoke, meaning Decedent could revoke her gift to the remaindermen at any time. See *Jamieson*, 912 S.W.2d at 605. As such, Appellants had a vested defeasible remainder which could be terminated by any sale, voluntary or involuntary, during Decedent's life. Therefore, Decedent's life estate was subject to satisfaction of her debts immediately prior to her death and the transfer of her interest in the Property on her death is a recoverable transfer under 461.300.10(4) for the full value of the property.

Based on the foregoing, Point I is denied.

*Point II: Retroactive Application*

■ Next, Appellants argue the Probate Court erred when it construed the recoverable transfer provisions of Section 461.300 to apply to the 1979 conveyance of the Property by Decedent because it constituted a retroactive application of the statute in violation of the *ex post facto* provisions of Article I, Section 13 of the Constitution of Missouri.

■ Article I, Section 13 of the Missouri Constitution provides "[t]hat no ex post facto law retrospective in its operation can be enacted." This section "prohibits retroactive laws which take away or impair vested rights acquired under existing law, or create a new duty, or attach a new disability to transactions already past." *Files v. Wetterau, Inc.*, 998 S.W.2d 95, 97 (Mo.App. E.D.1999). A right is vested when there is title to the present or future enjoyment of property. *Rice v. Huff*, 22 S.W.3d 774, 782–83, (Mo.App. W.D.2000).

■ Statutes are presumed to be applied prospectively with two exceptions: (1) when the legislature manifests an intent for retroactive application, or (2) when the statute is procedural in nature. *Files*, 998 S.W.2d at 97. On its face, nothing in Section 461.300 indicates the legislature intended it be applied retroactively. The question is whether Section 461.300 is substantive or procedural in nature.

■ Substantive laws affect the rights and duties giving rise to a cause of action, while procedural laws relate to the machinery used for carrying out the action. *Files*, 998 S.W.2d at 97–98. A law is retrospective if it gives a previous transaction a different effect from that which it had when the transaction transpired. *Rice*, 22 S.W.3d at 782–83. " 'Merely because a statute relates to antecedent transactions, it is not retrospective if it does not

change the legal effect of the transaction.' " *Id.* at 783, quoting *Dilworth v. Labor & Indus. Relations Comm'n*, 670 S.W.2d 199, 202 (Mo.App. W.D.1984). "[L]aws that take away or impair vested rights are substantive in nature." *Files*, 998 S.W.2d at 98.

Appellants argue Decedent had no ownership interest in the remainder when she died, as she had already transferred to Appellants a defeasible vested right in the future fee simple of the Property prior to passage of the Nonprobate Transfers Law. Appellants contend there was no statute in effect at the time of the conveyance that "imposed a disability on [Decedent's] right to transfer the remainder in fee to [Appellants] free and clear of potential claims of her future creditors" and that DSS seeks to use Section 461.300 to give a different legal effect to the 1979 conveyance from than which it had when it occurred. We disagree.

Section 461.300 and its predecessors do not give the Deed a different effect. In 1979, Decedent conveyed to herself a life estate with the power to revoke and a defeasible vested remainder in fee simple to Appellants. After the passage of the Nonprobate Transfers Law in 1989, Decedent continued to have a life estate with the power to revoke and Appellants continued to have a defeasible vested remainder in fee simple. The application of Section 461.300 does not change the legal effect of either Decedent's or Appellants' interests. Instead, it was Decedent's acceptance of Medicaid benefits after the passage of Sections 473.398 and 461.300 that affected the subject interests. By accepting Medicaid benefits when DSS could, by statute, seek to recover the value of the transferred assets, Decedent opened up her life estate as a possible asset for DSS to seek to recover. The fact that DSS is able to reach the full value of the property is not

the result of the statute altering the rights already in place, but instead is the natural consequence of Decedent's self conveyance of a power to revoke.

Section 461.300 does not " 'take away or impair vested rights acquired under existing laws, or create a new obligation, impose a new duty, or attach a new disability in respect to transactions or considerations already passed.' " *Nieuwendaal v. Missouri Dept. of Corrections,* 181 S.W.3d 153, 155 (Mo.App. W.D.2005), quoting *State ex rel. St. Louis–San Francisco Railway Co. v. Buder,* 515 S.W.2d 409, 410 (Mo. banc 1974). We find that Section 461.300 is procedural in that it is part of the machinery for the collection of debts incurred after the passage of Section 473.398.

Based on the foregoing, Point II is denied.

### Conclusion

The judgment of the Probate Court is affirmed.

MARY K. HOFF, P.J., and GEORGE W. DRAPER III, J. concur.