**Andrea D. BOHR and Franklin D. Bohr, Respondents,**

v.

**NODAWAY VALLEY BANK, Appellant.**

**No. WD 76033.**

Missouri Court of Appeals, Western District.

Oct. 15, 2013.

---

Before Division Three: MARK D. PFEIFFER, Presiding Judge, THOMAS H. NEWTON, Judge and CYNTHIA L. MARTIN, Judge.

CYNTHIA L. MARTIN, Judge.

Nodaway County Bank ("Bank") appeals the trial court's grant of summary judgment in favor of Andrea D. Bohr and Franklin D. Bohr on their petition for quiet title to real property owned by their grandmother, Dorothy Bohr, prior to her death. Bank contends the trial court's judgment was erroneous because Dorothy Bohr possessed only a life estate at the time of her death, and was thus not an "owner" authorized to execute a beneficiary deed pursuant to the Nonprobate Transfers Law, Chapter 461. Because we conclude that Dorothy Bohr was an "owner" as defined by the Nonprobate Transfers Law, we affirm.

**Factual and Procedural Background[1]**

On January 17, 1975, Franklin L. Bohr and Dorothy Bohr, husband and wife ("Franklin Sr." and "Dorothy"),[2] executed two general warranty deeds ("1975 Deeds") conveying to themselves a life estate, and to their son and daughter-in-law, Franklin L. Bohr, Jr. and Sharolyn A. Bohr, husband and wife ("Franklin Jr. and Sharolyn"), a remainder interest in a farm located in Easton, Buchanan County, Missouri ("Property"). The 1975 Deeds provided that:

Franklin L. Bohr and Dorothy B. Bohr, his wife, shall have an estate for their lives, with full power to sell, convey, mortgage, rent, option, lease or dispose of the fee title to said realty and to use

James R. Mueller, Kansas City, MO, for respondents.

Patrick N. Fanning, Kansas City, MO, for appellant.

1. We view the facts in a light most favorable to the party against whom summary judgment was entered. *Smith v. The Callaway Bank,* 359 S.W.3d 545, 549 (Mo.App. W.D.2012).

2. We refer to those involved in the real estate conveyances at issue in this case by first names to avoid confusion, as all have the last name "Bohr."

and consume the proceeds of any such transaction. The remainder interest in said realty, subject to the Life Estates and all of the powers granted to the Life Tenants[,] shall belong to Franklin L. Bohr, Jr., and Sharolyn A. Bohr, his wife.

All parties agree that the 1975 Deeds created a defeasible[3] remainder interest in Franklin Jr. and Sharolyn, with Dorothy reserving a life estate, the power to dispose of the Property, and the power to revoke or extinguish the remainder interest.

On December 1, 2001, the Bank's predecessor in interest obtained a judgment in bankruptcy court in the amount of $90,000 against Franklin Jr. and Sharolyn based on their default on five promissory notes.[4]

On February 13, 2002, Dorothy and husband, Lewis Pierson,[5] conveyed the Property by beneficiary deed ("2002 Beneficiary Deed") to Dorothy's grandchildren, Franklin D. Bohr and Andrea D. Bohr ("Franklin" and "Andrea" or collectively "Grantee Beneficiaries"). The 2002 Beneficiary Deed was recorded on the same date in the Buchanan County Recorder of Deeds office. The Beneficiary Deed referenced the powers reserved to Dorothy in the 1975 Deeds as follows:

> This beneficiary deed is given pursuant to a specific power to sell, convey[,] mortgage, rent[,] option[,] or lease and dispose of the fee title to the above described real estate reserved by grantor, Dorothy B. Bohr Pierson in those

certain General Warranty Deeds recorded in Book 1324 Page 707 and Book 1324 page 709 in the Office of the Recorder of Deeds of Buchanan County, Missouri.

The Beneficiary Deed noted that it was "not effective to convey title to the above described real estate until the death of Grantor Dorothy B. Bohr Pierson."

Dorothy died in May 2011. At the time of her death, she had not executed any other deeds relating to the Property. Approximately two months after Dorothy's death, Franklin Jr. executed a quitclaim deed conveying his interest in the Property to the Bank. In 2012, the Bank attempted to execute on the judgment in its favor against Franklin Jr. and Sharolyn by selling the Property, but the bankruptcy court, upon Grantee Beneficiaries' motion, quashed the writ of execution.

The Grantee Beneficiaries then filed a petition for quiet title, slander of title, and wrongful execution against the Bank, Franklin Jr. and Sharolyn, and other interested parties. The Bank filed counterclaims for quiet title, an accounting, and conspiracy for fraudulent transfer. The Grantee Beneficiaries filed a motion for partial summary judgment on their claim for quiet title, and on the Bank's counterclaims for quiet title and conspiracy for fraudulent transfer. The Bank also moved for partial summary judgment on the parties' respective quiet title claims.

On May 11, 2012, the trial court entered an order of partial summary judgment in

---

3. "Defeasible" is defined by BLACK'S LAW DICTIONARY, 6th Ed. (1990) p. 418 as "[s]ubject to be defeated, annulled, revoked, or undone upon the happening of a future event or the performance of a condition subsequent, or by a conditional limitation. An estate which is not absolute...."

4. The Bankruptcy Court found the promissory notes to be nondischargeable debt because Franklin Jr. and Sharolyn had misrepresented

that they owned the Property on their financial statements, and had not disclosed that Dorothy had a life estate with full power to convey and full power to revoke their remainder interest.

5. Franklin Sr. died on December 29, 1979, and Dorothy married Lewis Pierson on July 25, 1989.

favor of Andrea and Franklin on the parties' respective quiet title claims and on the Bank's counterclaims for conspiracy for fraudulent transfer and accounting.[6] The trial court found that:

> By the 1975 Deeds, Dorothy reserved to herself full power to convey or otherwise dispose of the fee title to the Property.
>
> The 1975 Deeds created a defeasible remainder interest in Franklin Jr. and Sharolyn, but Dorothy had the right to extinguish the defeasible remainder interest by sale, conveyance, or other disposition of fee title to the Property.
>
> The 2002 Beneficiary Deed specifically referred to and exercised the power reserved to Dorothy to convey and dispose of fee title to the Property.
>
> It was Dorothy's clear and unambiguous intent as evidenced by the 2002W Beneficiary Deed to convey fee simple title to the Property to the Grantee Beneficiaries and to extinguish the defeasible remainder interest granted by the 1975 Deeds to Franklin Jr. and Sharolyn.
>
> The 2002 Beneficiary Deed conveyed fee simple title to the Grantee Beneficiaries effective on the death of Dorothy.
>
> The 2002 Beneficiary Deed was an effective exercise of the power reserved by Dorothy to convey fee title to the Property.
>
> As of the date of Dorothy's death, no deed or other revocation of the 2002 Beneficiary Deed had been made.
>
> The Bank did not acquire any interest in the Property, either by the judgment against Franklin Jr. and Sharolyn or by Franklin Jr.'s quit claim deed.

> As of the date of Dorothy's death, neither Franklin Jr. nor Sharolyn had any interest in the Property; accordingly, the Property was not subject to attachment, levy, or execution by the Bank.
>
> Because the Bank had no interest in the Property, the Bank's accounting counterclaim was moot and was dismissed with prejudice.

The trial court thereafter entered a judgment dated December 12, 2012 ("Judgment"). In that Judgment, the trial court noted that Andrea and Franklin had voluntarily dismissed without prejudice their slander of title and wrongful execution claims. An additional interested party who had been named in the lawsuit, Patricia Higdon, had been dismissed pursuant to a written stipulation. The Judgment incorporated the findings and conclusions set forth in the order of partial summary judgment, and thus resolved all claims as to all parties. The Judgment also attached the legal description of the Property.[7]

The Bank filed this timely appeal.

### Standard of Review

Appellate review of a summary judgment is essentially *de novo. ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We review the record in the light most favorable to the party against whom the judgment was entered. *Wills v. Whitlock*, 139 S.W.3d 643, 646 (Mo.App. W.D.2004). "Summary judgment is appropriate when the moving party has demon-

---

**6.** The order noted that Franklin Jr. and Sharolyn were in default as they had failed to answer the Grantee Beneficiaries' petition, and that the order was thus binding on them.

**7.** Section 511.320 requires a party in whose favor a judgment quieting title is issued to "cause a copy [of the judgment] to be record-

ed in the office of the recorder of the county wherein the lands ... title to which is quieted or determined lie, within eight months after such judgment or decree is entered." This necessitates inclusion of a legal description for the subject property in any such judgment.

strated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law." *Roberts v. BJC Health System*, 391 S.W.3d 433, 437 (Mo. banc 2013).

### Analysis

The Bank raises a single point on appeal. It claims the trial court erred in granting summary judgment in favor of Andrea and Franklin on their quiet title action because Missouri's Nonprobate Transfer Law did not allow Dorothy to transfer fee simple title through a beneficiary deed because she was not an "owner" as defined in section 461.005.[8] As a result, according to the Bank, Dorothy did not possess an interest in the Property that could be transferred by beneficiary deed.

Before analyzing the Bank's claim of error, it is important to frame its narrow contours. The Bank does not contest on appeal that Franklin Jr. and Sharolyn possessed only a remainder interest in the Property by virtue of the 1975 Deeds, and that the remainder interest was defeasible, as it was subject to the powers reserved by Dorothy both to dispose of the Property and to revoke the remainder interest. The Bank does not contest that the 2002 Beneficiary Deed (assuming it was executed by an "owner") constituted an expression of Dorothy's intent to exercise both her reserved power of disposition of the Property and her reserved power to revoke the remainder interest in favor of Franklin Jr. and Sharolyn. The Bank does not contest that the 2002 Beneficiary Deed (assuming it was executed by an "owner") was legally effective to revoke the remainder interest in favor of Franklin Jr. and Sharolyn as of the date of its execution, and was legally effective to convey fee simple title to Andrea and Franklin as of the date of Dorothy's death.

The Bank's sole claim of error centers on whether the 2002 Beneficiary Deed was executed by an "owner." Because beneficiary deeds are a creature of statute, the Bank argues that unless Dorothy was an "owner" as that term is defined by section 461.005(8), then the 2002 Beneficiary Deed was a legal nullity that could not, as a matter of law, have had the intended effect of revoking the remainder interest in favor of Franklin Jr. and Sharolyn as of the date of its execution. As a result, according to the Bank, the Property passed outside of probate pursuant to the terms of the 1975 Deeds to Franklin Jr. and Sharolyn on the date of Dorothy's death. The Bank's claim of error thus frames a narrow and precise question of statutory construction. Was Dorothy an "owner" as that term is defined by section 461.005(8)? If the answer is yes, than the Bank concedes its appeal is without merit.

The construction of a statute is a question of law. *In re Estate of Hayden*, 258 S.W.3d 505, 508 (Mo.App. E.D.2008). "The primary rule of statutory construction is to determine the intent of the legislature from the plain and ordinary meaning of the words used in the statute." *Id.* "Courts may look outside the plain meaning of the statute only when the language is ambiguous or would lead to an illogical result." *Id.* (internal quotation omitted). "To give effect to the legislature's intent, the words should be construed within the context of the legislature's purpose in enacting the law." *Id.* "Every word, clause, sentence and section of a statute should be given meaning." *Id.* It is appropriate for the court to consider the history [sic] of the statute." *Id.*

Chapter 461, the Nonprobate Transfers Law of Missouri, was enacted in 1989. The Chapter created an informal means by

---

8. All statutory references are to RSMo 2000, as supplemented, except as noted.

which property, including real property, could be transferred outside of probate, and without consideration, by a "beneficiary designation" that could be revoked at anytime, and that would not become effective to convey the property until the death of the grantor. *See* 18 Trynicki, Timothy J. MISSOURI PRACTICE *Real Estate Law* section 3:19 (3rd ed.2006).

Section 461.025.1 addresses the transfer of an interest in real property by a "beneficiary designation," and provides that:

> A deed that conveys an interest in real property to a grantee designated by *the owner*, that expressly states that the deed is not to take effect until the death of *the owner*, transfers the interest provided to the designated grantee beneficiary, effective on death of *the owner*, if the deed is executed and filed of record with the recorder of deeds in the city or county or counties in which the real property is situated prior to the death of *the owner*. A beneficiary deed need not be supported by consideration or be delivered to the grantee beneficiary....

The Bank does not dispute that the 2002 Beneficiary Deed complied in every respect with the requirements of section 461.025.1 except the requirement that the beneficiary deed be executed by an "owner." The Bank contends that Dorothy was not an "owner" as that term is defined by section 461.005(8).

Section 461.005(8) defines "owner" for purposes of Chapter 461 as:

> [A] person or persons having a right, exercisable alone or with others, regardless of the terminology used to refer to the owner in any written beneficiary designation, to designate the beneficiary of a nonprobate transfer, and includes joint owners....

The Bank does not contest that Dorothy was a person, and that she had rights that she could exercise with respect to the Property. The Bank claims, however, that the phrase "to designate the beneficiary of a nonprobate transfer" modifies the phrase "a person or persons having a right," requiring reference to the definition of "nonprobate transfer" to fully comprehend the meaning of the term "owner."

"Nonprobate transfer" is defined in section 461.005(7) as:

> [A] transfer of property taking effect upon the death of the owner, pursuant to a beneficiary designation. A nonprobate transfer under sections 461.003 to 461.081 *does not include* survivorship rights in property held as joint tenants or tenants by the entirety, *a transfer to a remainderman on termination of a life tenancy,* a transfer under a trust established by an individual, either inter vivos or testamentary, a transfer pursuant to the exercise or nonexercise of a power of appointment, or a transfer made on death of a person who did not have the right to designate his or her estate as the beneficiary of the transfer.

(Emphasis added.) The first sentence of this definition is plain and unambiguous, and includes within its ambit *any* transfer effective on death of the owner that occurs by virtue of a "beneficiary designation." "Beneficiary designation" is defined as "a provision in writing that is not a will that designates the beneficiary of a nonprobate transfer, including the transferee in an instrument that makes the transfer effective on death of the owner...." Section 461.005(2). The 2002 Beneficiary Deed plainly falls within the scope of the first sentence of the definition of "nonprobate transfer."

The Bank does not disagree that the 2002 Beneficiary Deed is a "nonprobate transfer" if only the first sentence of the definition is read. The Bank argues that the second sentence of the definition of "nonprobate transfer" operates to narrow

the scope of the first sentence, however, because it lists transfers as to which the legislature intended to prohibit the use of beneficiary deeds. Because this list includes "a transfer to a remainderman on termination of a life tenancy," and because the 2002 Beneficiary Deed had the practical effect of creating a remainderman on the termination of Dorothy's life tenancy, the Bank argues that Dorothy was not an "owner" as defined by section 461.005(8). As such, according to the Bank, Dorothy's execution of the 2002 Beneficiary Deed was a legal nullity.

The Grantee Beneficiaries disagree, and argue that the Bank's reading of the second sentence of the definition of "nonprobate transfers" is contorted and strained. The Grantee Beneficiaries argue that the second sentence was intended simply to list other lawful transfers that have the similar effect of conveying title on the death of an owner outside of probate in order to distinguish them from "nonprobate transfers" effected by a beneficiary designation.

We agree with the Grantee Beneficiaries. The construction of section 461.005(7) suggested by the Bank is strained, and is not consistent with the plain language used by the legislature. Section 461.005(7) states simply that a "nonprobate transfer" "does not include" the enumerated list of other types of transfers. In other words, a "nonprobate transfer" is distinguishable from other transfers which also operate to transfer property on death, but through means other than an informal beneficiary designation. So construed, the reference to "a transfer to a remainderman on termination of a life tenancy" refers not to a prohibited use of a beneficiary deed, but instead to a distinguishable means by which title can pass to a remainderman once a life tenancy is terminated. If such a transfer sounds familiar, it is because, of course,

the 1975 Deeds fall squarely into this category of lawful "outside of probate" transfers that are distinguished from "nonprobate transfers" as defined by section 461.005(7).

Our construction of section 461.005(7) is consistent with section 461.025.2 which provides that:

> This section does not preclude other methods of conveyancing that are permitted by law and that have the effect of postponing enjoyment of an interest in real property until the death of the owner . . . .

In short, the Nonprobate Transfer Law was not intended to invalidate or prohibit other lawful means of effecting transfers of real estate on death and outside of probate, but was instead intended to supplement those means through the addition of a recorded beneficiary designation. In light of this intent, it would be illogical to conclude that the second sentence of the definition of "nonprobate transfer" was intended as a list of persons prohibited from executing beneficiary deeds.

To hold otherwise would lead to absurd results. For example, the second sentence of section 461.005(7) lists "survivorship rights in property held as joint tenants or tenants by the entirety" as an example of what is not included within the definition of "nonprobate transfers." The Bank's construction would require us to conclude that joint tenants are not owners, and are ineligible to execute beneficiary deeds because the effect of the beneficiary deed would be to transfer survivorship rights. Yet, the definition of "owner" expressly includes "joint owners." Section 461.005(8). "Joint owners" is defined as "persons who hold property as joint tenants with right of survivorship and a husband and wife who hold property as tenants by the entirety." The Bank's construction of the definition of "nonprobate transfers" would render the

Nonprobate Transfer Law an undecipherable Gordian Knot. When the plain language of a statute yields a result that is harmonious with other provisions in the statutory scheme, we will not yield to the impulse of imposing a contrary construction on one provision of the statute that would create disharmony and lead to absurd results when read with other provisions of the statute. *Aquila Foreign Qualifications Corp. v. Dir. of Rev.*, 362 S.W.3d 1, 4 (Mo. banc 2012) (holding that all portions of a statute are to be read in concert as to harmonize all provisions, and that "construction of a statute should avoid unreasonable or absurd results").

We conclude that Dorothy was not excluded from the definition of "owner" under section 461.005(8) merely because she held a life estate in the Property at the time she executed the 2002 Beneficiary Deed.

We do observe that but for the fact Dorothy's reserved life estate carried with it the reserved right to dispose of the Property and the reserved right to revoke the remainder interest created by the 1975 Deeds, the 2002 Beneficiary Deed, though lawful, would have had no practical effect on Dorothy's death. This outcome would not have been the result of a tortured construction of the definition of "owner," but would instead have been the function of common sense. Since a beneficiary deed does not take effect until the death of the owner, a beneficiary deed signed by a person possessing nothing more than a life estate with no power or intervening act by another to effect a change in that status conveys nothing by a beneficiary deed as at the moment the beneficiary deed is to take effect on the grantor's death, the grantor has been dispossessed of any interest to convey.

Our circumstances are different. Dorothy possessed not just a life estate, but *the express power to effectively restore her status as a fee owner in the Property* by sale or other conveyance of the Property or by any other act deemed legally sufficient to revoke the remainder interest created by the 1975 Deeds. The trial court found the 2002 Beneficiary Deed had both the intent and the legal effect, as of the date of its execution, to revoke the remainder interest created by the 1975 Deeds. As a result, upon execution and recordation of the 2002 Beneficiary Deed, Dorothy no longer possessed just a life estate in the Property. She had restored herself by revocation of the remainder interest to the fee simple owner of the Property.

Other than challenging whether Dorothy was an "owner" with the statutory right to execute a beneficiary deed, the Bank does not contest the trial court's findings or conclusions. In fact, the Bank concedes that if Dorothy was an "owner" as defined by section 461.005(8), then the trial court's conclusions with respect to Dorothy's intent and the legal effect of the Beneficiary Deed are correct.[9]

The Bank's sole point on appeal is denied.

### Conclusion

The Judgment of the trial court is affirmed.

All concur.

---

9. Because the Bank does not challenge whether the 2002 Beneficiary Deed was legally effective, at the time of its execution, to revoke the defeasible remainder interest in the Property created by the 1975 Deeds so long as Dorothy was an "owner" as defined in section 461.005(8), we accept the trial court's finding in this regard without further analysis or discussion.