

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| IN THE ESTATE OF: BETTY L. SHIPPERT, Deceased. | ) ) ) | |
| TERRY G. SHIPPERT, Personal Representative, | ) ) ) ) | |
| Appellant, | ) ) | WD87348 |
| v. | ) ) ) | OPINION FILED: June 17, 2025 |
| CARY SHIPPERT, SHARI D. PITTS, SARAH E. LAWRENCE, and BRYON E. SHIPPERT, | ) ) ) ) ) | |
| Respondents. | ) | |

**Appeal from the Circuit Court of Clay County, Missouri**
**The Honorable David P. Chamberlain, Judge**

**Before Division One:** Karen King Mitchell, Presiding Judge,
Lisa White Hardwick, Judge, and Mark D. Pfeiffer, Judge

Appellant Terry Shippert appeals the probate court's order reopening the estate of

Betty L. Shippert and denying Terry's request that the court direct payment of certain

costs of estate administration that would include his attorney's fees.[1] In Point I, Terry

---

[1] We use first names in this opinion to avoid confusion among various individuals sharing the same last name; no disrespect is intended.

claims that the probate court erred in reopening the estate because no proceeding contemplated by § 473.840[2] was filed during the six-month period allowed. In Point II, Terry claims the court was compelled by the terms of a trust document to order payment of his attorney's fees as expenses of estate administration. Finding no error, we affirm.

## Background[3]

On March 29, 2022, Betty died, survived by three of her children: Terry, Cary Shippert, and Shari Pitts. Betty's will was admitted to probate, and, pursuant to the will's terms, Terry was appointed independent personal representative of the estate. The will is a pour-over will, which bequeathed all estate assets to the will's sole residuary beneficiary, the Betty L. Shippert Trust (the Trust). Pursuant to the Trust's terms, Terry became the successor trustee upon Betty's death but at some point was replaced by Shari.[4]

In July and August 2022, the Notice of Letters Testamentary Granted was published. During the six-month period following the first publication of that notice, which expired January 14, 2023, pursuant to § 473.083.1, no petition was filed contesting the will's validity. In October 2022, however, Cary filed his petition to invalidate the

---

[2] All statutory references are to the Revised Statutes of Missouri, Supp. 2021.

[3] We defer to "the trial court's factual determinations" but review *de novo* its legal conclusions and application of law to the facts. *Stockman v. Schmidt*, 673 S.W.3d 100, 107 (Mo. App. W.D. 2023) (quoting *Zweig v. Metro. St. Louis Sewer Dist.*, 412 S.W.3d 223, 231 (Mo. banc 2013)).

[4] The Trust is the subject of a separate lawsuit brought by Cary against Terry (and other family members) in October 2022 in the same circuit court's probate division. Following the court's entry of summary judgment in Terry's favor in July 2024, that case was appealed to this court as Case No. WD87482.

Trust (initiating a separate lawsuit in Case No. 22CY-CV09634), alleging, among other things, Terry's undue influence over Betty.

On August 14, 2023, Terry filed a Statement of Account, which stated, pursuant to § 473.840.6, that "if no proceeding is commenced in the Court within 6 months after filing of the Statement of Account, the [Independent] Personal Representative would be discharged from further claim or demand by any interested party." No objections were filed to the Statement of Account, but on December 18, 2023, Cary filed a "verified petition" (in the pending estate case) to remove Terry as personal representative, alleging Terry's "conversion, fraud, theft, and embezzlement of Betty Shippert's assets prior to her death" caused a "conflict of interest [for Terry] as a potential debtor of the Estate."[5] No hearing on Cary's removal petition took place before February 15, 2024—the expiration of the six-month period after filing the Statement of Account. On February 15, 2024, the court made these docket entries: "Case Reviewed" and "Probate Ord No Further Process."

On April 5, 2024, Cary moved to reopen the estate to allow for a hearing on his removal petition, and the court granted that motion on April 16, 2024, while also ordering "No Further Process" and that Terry remain as personal representative. Terry then moved to set aside the court's order reopening the estate and requested that Shari, the current trustee of the Trust, be ordered to pay his attorney's fees incurred in challenging

---

[5] Although Cary's removal petition makes allegations of impropriety by Terry, including undue influence over Betty to change the terms of her will, the petition seeks only to remove Terry as personal representative and replace him with Shari.

3

Cary's removal petition and the reopening of the estate because they were "administrative expenses of the estate." Following a hearing, the court denied Terry's motion, noting that § 473.140 required a hearing on Cary's removal petition. This appeal followed.

**Analysis**

Terry appeals the probate court's order reopening Betty's estate and denying Terry's request that the court direct payment of certain costs of estate administration, including his attorney's fees. In Point I, Terry claims that the probate court erred in reopening the estate because no proceeding contemplated by § 473.840 was filed during the six-month period allowed. In Point II, Terry claims the court was compelled by the terms of a trust document to order payment of his attorney's fees as expenses of estate administration. Finding no error, we affirm.

**I.    The probate court did not err in finding that the estate must remain open due to the timely filing of a petition to remove the personal representative.**

Point I raises a question of statutory construction and the probate court's application of probate law, specifically §§ 473.840 and 473.147.2. "The judgment of a circuit court entered in a probate proceeding 'will be upheld on appeal unless it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law.'" *Estate of Heil v. Heil*, 538 S.W.3d 382, 386 (Mo. App. W.D. 2018) (quoting *In re Estate of Hayden*, 258 S.W.3d 505, 508 (Mo. App. E.D. 2008)). If the issue "is strictly a question of law, we apply *de novo* review," giving "no deference to the circuit court's rulings on questions of law." *Jennings v. Atkinson*, 456 S.W.3d 461, 464 (Mo. App. W.D. 2014).

4

"Statutory interpretation is a question of law." *Id.* "The primary rule of statutory construction is to determine the intent of the legislature from the plain and ordinary meaning of the words used in the statute." *Estate of Hayden*, 258 S.W.3d at 508.

Section 473.840.6 provides:

> If no *proceeding* involving the independent personal representative is filed in the court within six months after the statement of account is filed, the representative is discharged from further claim or demand by any interested party. The court shall not make any order of discharge. If *proceedings* are filed within six months after the statement of account is filed, the *liability*, if any, of the representative, to interested parties, shall be determined by the court, and upon satisfaction of any such liability the court shall make an order discharging the representative.

(Emphasis added.)

Terry claims that no "proceeding" was filed, as that term is used in § 473.840.6, that could prevent his automatic discharge on February 15, 2024, six months after the Statement of Account was filed.[6] Specifically, Terry argues that the reference in the statute to "liability" means that the term "proceeding" must be narrowly construed to involve a claim of liability against the personal representative. So here, where only a petition to remove the personal representative was filed during the applicable six-month window, Terry claims no "proceeding" was initiated. Neither § 473.840 nor the

---

[6] Terry also argues that one of Cary's bases for removal—that Terry wrongfully appropriated funds from Betty's bank account—does not involve assets of Betty's estate because the bank account was jointly held by individuals who survived her and, therefore, those funds never passed into Betty's estate. We do not consider this second argument because, as Terry himself points out, his appeal concerns the court's procedural authority to keep the estate open, not whether the basis for the removal petition is sound.

definitions in Chapter 473 define "proceeding," and the parties acknowledge that no case has defined "proceeding" as it is used in § 473.840.6.

While claims for monetary liability are obviously contemplated by § 473.840.6 and may even be the most common proceedings brought after the final accounting and distribution, that alone does not dictate a narrow reading of the term "proceeding." The author of The Missouri Practice Probate Code Manual (Manual) logically opines that relief under § 473.840 "anticipates a judgment against the personal representative" *because*, *after* estate property has been distributed, the personal representative "has no authority to reclaim or repossess the property." Francis M. Hanna, 4 Mo. Prac., Probate Code Manual § 473.840 (2d ed.). In other words, if the proceeding concerns the personal representative's wrongful distribution of estate assets, it is too late to do anything but demand that the personal representative pay damages. *Id.* The Manual explains that the "only statutory remedy" is against the personal representative "because [§ 473.840] does not authorize an order requiring the distributees to return any of the property or to make contribution toward payment of any claims." *Id.* The Manual's entire focus on this point is that, after the estate's assets have been distributed, the probate court has authority only over the personal representative—not over anyone who received a distribution of estate assets. Therefore, it is logical that the statute speaks in terms of an action for liability against the personal representative.

But the statute does not require that the filed "proceeding" seek liability of the personal representative; it requires only that the filing "involve" the personal representative and that the court determine "liability, if any" of the personal

6

representative. Regarding § 473.840, the Manual states that "'additional proceedings' could involve any question regarding administration of the estate from day one." *Id*. A petition to remove a personal representative is an action specifically contemplated by Chapter 473. Section 473.140 describes the legal process necessary for a party to seek removal of a personal representative. The party must file a written complaint "supported by affidavit" and give notice to the personal representative. *Id*. If that is done, § 473.140 states that the court "shall hear the matter." This process involves the formal procedures indicative of a court proceeding. *See In re Estate of Vester*, 4 S.W.3d 575, 577 (Mo. App. W.D. 1999) (where the court recognized the personal representative's right to due process—notice and a hearing—before she could be removed pursuant to § 473.140).

We are guided by the fact that the term "proceeding" generally has a broad meaning under the law. According to Black's Law Dictionary, "proceeding" is a broad term encompassing "any procedural means of seeking redress from a tribunal"; it is a word "much used to express the business done in courts." *Proceeding*, *Black's Law Dictionary* (12th ed. 2024). Thus, we will employ a broad definition of the term "proceeding" absent language in § 473.840 that clearly indicates the legislature intended the term to have a narrower meaning in this context. Although claims for monetary liability may be the subject of court proceedings involving a personal representative, we are unable to glean from the language in § 473.140 that a timely filed request for court action to remove a personal representative, which the court is required to hear, is not a "proceeding" that mandated a hearing under § 473.840 before the estate could close.

It appears that the probate court believed that the estate had automatically closed in February 2024. In its July 2024 judgment that Terry appealed, the probate court stated that Terry was discharged as of February 15, 2024, and it affirmed its April 2024 order reopening the estate (thereby denying Terry's motion to set aside that order), stating that "the Estate is to remain open, with No Further Process and Terry G. Shippert is to remain as Personal Representative." The judgment also denied Terry's request for attorney's fees.

Although we disagree with some of the wording in the July 2024 judgment, we interpret the court's order as properly recognizing that it was required to consider the pending request to remove Terry as personal representative before the estate could close. The result of the July 2024 judgment—the probate court's finding that the estate must remain open until the removal petition was considered—was correct. On appeal, we look to the "court's intention in entering the order," *Doynov v. Doynov*, 149 S.W.3d 917, 928 (Mo. App. W.D. 2004), being "primarily concerned with the correctness of the [lower] court's result, not the route taken by the [lower] court to reach that result." *Rouner v. Wise*, 446 S.W.3d 242, 249 (Mo. banc 2014) (quoting *Business Men's Assur. Co. of Am. v. Graham*, 984 S.W.3d 501, 506 (Mo. banc 1999)).[7]

Pursuant to § 473.840.6, Terry's discharge as personal representative depended on "no proceeding [being] commenced" before the February 15, 2024 deadline. But a

---

[7] Even if we were to find the court erred in referring to the "reopening" of an estate that had not closed, such an error would be harmless because it could not "materially affect[] the merits of the action." *See* § 512.160.2.

proceeding *was* commenced when Cary filed his petition for removal in December 2023. Section 473.840.6 gives the probate court no independent authority to close the estate,[8] and nothing in the record shows that the probate court took any action to do so.[9] We note, however, that under § 473.840.1, the personal representative's discharge *may* be "prohibited by order of the court," which was the effect of the probate court's judgment.

Because we find that automatic discharge and the resulting closure of the estate did not occur, both because a proceeding was timely filed within the appropriate six-month period and because of the probate court's order requiring that a hearing be held on that proceeding, we also find no merit in Terry's argument that Cary was required to request Terry's removal under § 473.147 (the procedure for appointing an "administrator d.b.n." after the "executor or administrator has been discharged") instead of § 473.140.

Point I is denied.

## II. The probate court did not err in denying the request to order payment of attorney's fees.

By statute, the court may order "properly allowable" fees be paid to "[a]ttorneys performing services for the estate at the instance of the personal representative." §§ 473.153.3, 473.153.6. "[A]ttorneys' fees may not be collected from the estate 'unless it is made to appear affirmatively that the services were necessary, or were of benefit to the estate.'" *In re Matter of Williams*, 573 S.W.3d 106, 117 (Mo. App. W.D. 2019)

---

[8] Pursuant to § 473.840.6, the court "shall not make any order of discharge."

[9] On February 15, 2024, the court's docket entry states only "Probate Ord No Further Process." After granting Cary's motion to reopen the estate, the court's April 16 docket entry similarly stated, "No Further Process Ordered." Thus, "No Further Process" was never meant to acknowledge that the estate had closed.

9

(quoting *Grove v. Reynolds*, 71 S.W. 1103, 1104 (Mo. App. 1903)). Although "fees are treated as expenses of administration," the determination of a fee request "is within the sound discretion of the trial court." *In re Estate of Straszynski*, 265 S.W.3d 394, 395 (Mo. App. S.D. 2008). A statute providing that the court "may" award fees gives the court "discretion to either award or deny the request." *Lehmann v. Bank of America*, 427 S.W.3d 315, 324 (Mo. App. E.D. 2014) (interpreting § 456.10-1004's provision regarding fee awards in trust litigation).[10] The appellant bears the burden of showing "a clear abuse of discretion" by the court's fee decision. *Smith v. Estate of Harrison*, 829 S.W.2d 70, 73 (Mo. App. E.D. 1992). We will not reverse the court's decision on a request for attorney's fees unless it is "so arbitrary or unreasonable that it indicates indifference and lack of proper judicial consideration." *Id.*

The Trust, in Article 6, provides that the trustee "shall pay . . . expenses of administration" of Betty's estate either to the personal representative or directly to the "appropriate creditors." Although attorney's fees may be included in "expenses of administration," they are awarded *by the court* only if "properly allowable." § 473.153.6. "If the court finds that any attorney's services . . . are . . . injurious to the estate, no attorney fee whatever shall be allowed." *Id.* This court has previously found that attorney's fees incurred by a personal representative "in connection with the efforts to

---

[10] In arguing that the Trust requires payment of his attorney's fees, Terry also cites this provision of the Missouri Uniform Trust Code, which provides that the court, "as justice and equity may require, *may* award costs and expenses, including reasonable attorney's fees, to any party." § 456.10-1004 (emphasis added).

remove him . . . would be for his personal benefit, and not directly to the benefit of the estate." *In re Matter of DeGraff's Estate*, 637 S.W.2d 277, 278 (Mo. App. W.D. 1982).

The probate court's order denying the request for attorney's fees specifically noted that Terry's request concerned fees "incurred after the final Statement of Account and Schedule of Distribution was filed and the remaining assets of the estate had been distributed" to the trustee; specifically, these fees were "associated with the Order Reopening the Estate and the Petition to Remove Terry G. Shippert as Personal Representative." Nothing in the record shows that these fees were incurred for the benefit of the estate. We find no abuse of discretion in the court's denial of Terry's fee request.

Point II is denied.

### Conclusion

We affirm the probate court's judgment and remand the case for further proceedings in accordance with this opinion.

_____
Karen King Mitchell, Presiding Judge

Lisa White Hardwick, Judge, and Mark D. Pfeiffer, Judge, concur.

11